# IN UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN KEITH HEBERT, IC "Plata",<br>President of International Defense Corporation,<br>4711 Renie Road,<br>Erath, Louisiana 70533,<br><br>INTERNATIONAL DEFENSE CORPORATION,<br>4711 Renie Road,<br>Erath, Louisiana 70533,<br><br>Plaintiff(s),<br><br>VS.<br><br>**THE UNITED STATES OF AMERICA,**<br>**(Unprivileged War Belligerents,**<br>**And Co-Conspirators),**<br><br>(1)  (The United States Central Intelligence Agency,<br>(2)  And the Entire CIA Command to Afghanistan,<br>(3)  And the CIA Deputy Chief of Support DCOS<br>Christine Massowd "Ricochet" / "Schroeder",<br>(4)  And the CIA Chief of Security COS "Watchdog",<br>(5)  And the CIA Regional Medical Officer /<br>Psychologist Maria L. Dittrich, PhD "Westside",<br>(6)  And the CIA Kabul Base Area Security Officer<br>(ASO) in Afghanistan "Pebbles",<br>(7)  And the CIA Sulaymaniyah Base Area Security<br>Officer (ASO) in Iraq, "Tiger",<br>(8)  And the CIA Director John Owen Brennan,<br>The Office of Counsel,<br>1000 Colonial Farm Road,<br>McLean, Virginia 22101),<br><br>(9)  (The United States Central Intelligence Agency,<br>And the Las Vegas Office of the CIA Operations,<br>The Office of Counsel,<br>1000 Colonial Farm Road,<br>McLean, Virginia 22101),<br><br>(10) (Xe Services LLC, Academi, Constellis Holdings Inc.,<br>Triple Canopy Inc., and Apollo Global<br>Management LLC Corporate Headquarters,<br>(11) And the Academi Management to Afghanistan,<br>(12) And RC-1 "Flathead",<br>(13) And RC-1 "Shrapnel",<br>(14) And C-1 Ryan M. Scott "Bankhead",<br>(15) And C-1 Larry H. Heppner "Bull", | **CIVIL ACTION NO.** _____<br><br>**CRIMINAL ACTION NO.    DOJ ID # 3936092**<br><br><br>**TRIAL BY JURY DEMAND**<br><br><br><br>**COMPLAINT:**<br><br>TREASON, SEDITION, AND SUBVERSIVE ACTIVITIES<br>(18 U.S.C. §§ 2381-2391); AND<br><br>COMMUNIST CONTROL LAW AND LEGISLATIVE<br>FINDING OF FACT AND DECLARATION OF<br>NECESSITY (50 U.S.C. §§ 841-844); AND<br><br>RACKETEER INFLUENCED AND CORRUPT<br>ORGANIZATIONS (18 U.S.C. §§ 1961-1968); AND<br><br>ACTION FOR NEGLECT TO PREVENT (42 U.S.C. § 1986);<br>AND<br><br>COMPENSATION FOR VIOLATIONS OF THE<br>LAW OF WAR (Law of War § 18.16). |

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
FEB 2 3 2021
TONY R. M___, CLERK
BY _____ DEPUTY



(16) And TL Paul Detwiler "Noodler",                                )
(17) And TL Ian M. Pearson "Bryant",                               )
    The Office of Counsel,                                              )
    12018 Sunrise Valley Drive, Suite 140,                   )
    Reston, Virginia 20191),                                           )
                                                                                   )
(18) (The Starr Indemnity and Liability Company,          )
    And Gallagher Bassett Services,                              )
(19) And Senior Resolution Manager Teresa Martin,       )
    The Office of Counsel,                                              )
    399 Park Avenue, 2nd Floor,                                    )
    New York, New York 10022),                                   )
                                                                                   )
(20) (The Turley Law Firm,                                          )
(21) And William David Turley,                                    )
    The Office of Counsel,                                              )
    7428 Trade Street,                                                   )
    San Diego, California 92121),                                  )
                                                                                   )
(22) (The State of California,                                      )
    And the Office of the Franchise Tax Board,              )
    The Office of Counsel,                                              )
    9646 Butterfield Way,                                             )
    Sacramento, California 95827),                               )
                                                                                   )
(23) (The United States Postal Service Headquarters,     )
    The Office of Counsel,                                              )
    475 L'Enfant Plaza, S.W.,                                        )
    Washington, D.C. 20260-0004),                              )
                                                                                   )
(24) (The United States Internal Revenue Service,         )
    The Office of Counsel,                                              )
    1111 Constitution Avenue, N.W.,                            )
    Washington, D.C 20224),                                        )
                                                                                   )
(25) (The United States Department of the Treasury,      )
    The Office of Counsel,                                              )
    1500 Pennsylvania Avenue, N. W.,                          )
    Washington, D. C. 20220),                                      )
                                                                                   )
(26) (And all other found Co-Conspirators / Principles),  )
                                                                                   )
                                                                                   )
            *Defendant(s).                                )

\*(All Defendant(s) are in both "Personal Individual Capacity" and "State Official Capacity".)

**TREASON, SEDITION, AND SUBVERSIVE ACTIVITIES; AND**

**COMMUNIST CONTROL LAW AND LEGISLATIVE FINDING OF FACT**

**AND DECLARATION OF NECESSITY; AND RACKETEER INFLUENCED AND**

**CORRUPT ORGANIZATIONS; AND ACTION FOR NEGLECT TO PREVENT; AND**

**COMPENSATION FOR VIOLATIONS OF THE LAW OF WAR COMPLAINT.**

# TABLE OF CONTENTS

**Page**

**NATURE OF ACTION** ........................................................................................................ 1

I.        INTRODUCTION ........................................................................................ 1

II.       OVERVIEW OF DEFENDANT(S) MALICIOUS SEDITIOUS CONSPIRACY ............................... 2

III.      DAMAGES TO PLAINTIFF(S) ............................................................................ 6


**JURISDICTION AND VENUE** ............................................................................................ 7

I.        IN UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF LOUISIANA .................................................... 7


**PARTIES** ............................................................................................................... 7
PLAINTIFF(S)

I.        JOHN KEITH HEBERT, IC "Plata", President of International Defense Corporation ................... 7

II.       INTERNATIONAL DEFENSE CORPORATION, a Nevada Corporation ............................... 7

DEFENDANT(S)

I.        (1) The United States Central Intelligence Agency, and (2) the Entire CIA Command
          to Afghanistan, and (3) the CIA Deputy Chief of Support DCOS Christine Massowd
          "Ricochet" / "Schroeder", and (4) the CIA Chief of Security COS "Watchdog", and
          (5) the CIA Regional Medical Officer / Psychologist Maria L. Dittrich, PhD "Westside",
          and (6) the CIA Kabul Base Area Security Officer (ASO) in Afghanistan "Pebbles",
          and (7) the CIA Sulaymaniyah Base Area Security Officer (ASO) in Iraq, "Tiger", and
          (8) the CIA Director John Owen Brennan .......................................................... 7

II.       (9) The United States Central Intelligence Agency, and the Las Vegas Office
          of the CIA Operations .............................................................................. 8

III.      (10) Xe Services LLC, Academi, Constellis Holdings Inc., Triple Canopy Inc., and
          Apollo Global Management LLC Corporate Headquarters, and (11) the Academi
          Management to Afghanistan, and (12) RC-1 "Flathead", and (13) RC-1 "Shrapnel",
          and (14) C-1 Ryan M. Scott "Bankhead", and (15) C-1 Larry H. Heppner "Bull",
          and (16) TL Paul Detwiler "Noodler", and (17) TL Ian M. Pearson "Bryant" ........................ 8

IV.       (18) The Starr Indemnity and Liability Company, and Gallagher Bassett Services,
          and (19) Senior Resolution Manager Teresa Martin ............................................... 9

V.        (20) The Turley Law Firm, and (21) William David Turley ............................................ 9

VI.       (22) The State of California, and the Office of the Franchise Tax Board ............................ 10

VII.      (23) The United States Postal Service Headquarters ................................................ 10

VIII.     (24) The United States Internal Revenue Service .................................................... 10

IX.       (25) The United States Department of the Treasury .................................................. 11

X.        (26) And all other found Co-Conspirators / Principles ............................................... 11


**FACTS OF ALLEGATIONS AND ITEMS OF EVIDENCE** ................................................. 11

# TABLE OF CONTENTS

**Page**

CAUSES OF ACTION ............................................................................................................ 34

COUNT I ............................................................................................................................. 34

      TORTURE; CONSPIRACY TO COMMIT TORTURE; WAR CRIMES; CONSPIRACY TO
COMMIT WAR CRIMES; CONSPIRACIES BY UNITED STATES OFFICIALS TO KILL,
KIDNAP, MAIM, OR INJURE PERSONS OR DAMAGE PROPERTY IN A FOREIGN
COUNTRY; CONSPIRACY TO COMMIT ASSAULT WITH DEADLY WEAPONS;
CONSPIRACY AND ATTEMPT TO COMMIT ASSAULT WITH WEAPONS OF MASS
DESTRUCTION; AIDING THE ENEMY; WRONGFULLY AIDING THE ENEMY;
EXECUTIVE CORRUPTION; SPIES; UNPRIVILEGED BELLIGERENTS – LIABILITY
FOR PARTICIPATION IN HOSTILITIES; AND CRIMINAL BREACH OF CONTRACT
THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ................................................................. 34

COUNT II ............................................................................................................................ 35

      TAMPERING WITH FEDERAL WITNESSES; RETALIATING AGAINST FEDERAL
WITNESSES; RETALIATING AGAINST A WITNESS, VICTIM, OR AN INFORMANT;
OBSTRUCTION OF PENDING FEDERAL COURT PROCEEDINGS; OBSTRUCTION
OF PENDING CONGRESSIONAL OR FEDERAL ADMINISTRATIVE PROCEEDINGS;
KNOWINGLY OBSTRUCTING JUSTICE; OBSTRUCTION OF CRIMINAL
INVESTIGATIONS; GOVERNMENT OFFICIALS WHO AUTHORIZED OR
CONSPIRED TO STALK INDIVIDUALS WITH THE INTENT TO HARASS,
INJURE, OR INTIMIDATE ANOTHER; CIVIL ACTION TO RESTRAIN
HARASSMENT OF A VICTIM OR WITNESS; CONSPIRACY TO COMMIT
ASSAULT WITH DEADLY WEAPONS; ILLEGAL SURVEILLANCE TECHNIQUES;
SPYING FOR THE ENEMY; AIDING THE ENEMY; WRONGFULLY AIDING THE
ENEMY; EXECUTIVE CORRUPTION; REBELLION AND INSURRECTION;
SEDITIOUS CONSPIRACY; ADVOCATING OVERTHROW OF GOVERNMENT;
CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS; CONSPIRACY AGAINST
RIGHTS; ACTION FOR NEGLECT TO PREVENT CONSPIRACY TO COMMIT
TORTURE; AND ACTION FOR NEGLECT TO PREVENT CONSPIRACY TO COMMIT
WAR CRIMES THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ..................................... 35

COUNT III ........................................................................................................................... 35

      TREASON; CONSPIRACY TO COMMIT TREASON; INCITEMENT IN COMMITTING
TREASON; COMPLICITY IN COMMITTING TREASON; SOLICITING OTHERS TO
COMMIT A CRIME OF VIOLENCE; CONSPIRING TO SOLICIT, AND AIDING AND
ABETTING SUCH SOLICITATION; COMMAND RESPONSIBILITY AS A MODE
OF LIBILITY FOR AN OFFENSE; AIDING AND ABETTING AS A PRINCIPLE OF
STATE RESPONSIBILITY; ESPIONAGE, SABOTAGE, AND OTHER HOSTILE ACTS;
AND ACTION FOR NEGLECT TO PREVENT CONSPIRACY TO COMMIT TREASON
THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ................................................................. 35

COUNT IV ........................................................................................................................... 36

      WAGING A WAR OF AGGRESSION; CONSPIRACY TO WAGE A WAR OF
AGGRESSION; CRIMES AGAINST HUMANITY; CONSPIRACY TO COMMIT
CRIMES AGAINST HUMANITY; AND ACTION FOR NEGLECT TO PREVENT
WAGING A WAR OF AGGRESSION AND CRIMES AGAINST HUMANITY
THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ................................................................. 36

# TABLE OF CONTENTS

**Page**

COUNT V ................................................................................................…...……..………………...….. 37

      PERSECUTION; CONSPIRACY TO COMMIT PERSECUTION; SLAVERY;
      CONSPIRACY TO COMMIT SLAVERY; INTICEMENT INTO SLAVERY;
      PEONAGE, SLAVERY, AND TRAFFICKING IN PERSONS; BENEFITTING
      FINANCIALLY FROM PEONAGE, SLAVERY, AND TRAFFICKING IN
      PERSONS; AND ACTION FOR NEGLECT TO PREVENT CONSPIRACY
      TO COMMIT PERSECUTION AND SLAVERY THAT RESULTED IN
      DAMAGES TO PLAINTIFF(S) ....……….........................................................…....... 37

COUNT VI .................................................................................................................... 37

      FEDERAL DEFENSE BASE ACT INSURANCE FRAUD; CONSPIRACY TO
      COMMIT FEDERAL DEFENSE BASE ACT INSURANCE FRAUD; HEALTH
      CARE FRAUD; ATTEMPT AND CONSPIRACY TO COMMIT HEALTH CARE
      FRAUD; CRIMES BY OR AFFECTING PERSONS ENGAGED IN THE BUSINESS
      OF INSURANCE WHOSE ACTIVITIES AFFECT INTERSTATE COMMERCE; CIVIL
      PENALTIES AND INJUNCTIONS FOR VIOLATIONS OF SECTION 1033; FALSE
      STATEMENTS RELATING TO HEALTH CARE MATTERS; INJUNCTIONS AGAINST
      FRAUD; ENRICHMENT IN THE POWER OF THE PURSE WITH INTENTION OF
      PERSONAL GRATIFICATION; RETALIATING AGAINST A WITNESS, VICTIM,
      OR AN INFORMANT; CIVIL ACTION TO RESTRAIN HARASSMENT OF A VICTIM
      OR WITNESS; CIVIL ACTION TO PROTECT AGAINST RETALIATION IN FRAUD
      CASES; CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS; AND CONSPIRACY
      AGAINST RIGHTS THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ...........................…....... 37

COUNT VII ...................................................................................................................…... 38

      INTERSTATE TAX FRAUD; CONSPIRACY TO COMMIT INTERSTATE TAX
      FRAUD; INTERSTATE BANK FRAUD; CONSPIRACY TO COMMIT INTERSTATE
      BANK FRAUD; INJUNCTIONS AGAINST FRAUD; ENRICHMENT IN THE POWER
      OF THE PURSE WITH INTENTION OF PERSONAL GRATIFICATION; TAMPERING
      WITH FEDERAL WITNESSES; RETALIATING AGAINST FEDERAL WITNESSES;
      RETALIATING AGAINST A WITNESS, VICTIM, OR AN INFORMANT; CIVIL
      ACTION TO RESTRAIN HARASSMENT OF A VICTIM OR WITNESS; CIVIL
      ACTION TO PROTECT AGAINST RETALIATION IN FRAUD CASES;
      CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS; AND CONSPIRACY
      AGAINST RIGHTS THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ………………......…......... 38

COUNT VIII .................................................................................................…............ 39

      INTERNATIONAL AND INTERSTATE HATE CRIME ACTS; STATE
      TERRORISM; STATE-SPONSORED TERRORISM; INTERNATIONAL
      AND INTERSTATE TERRORISM ACTIVITIES; PROVIDING MATERIAL
      SUPPORT TO TERRORIST; AND PROVIDING MATERIAL SUPPORT OR
      RESOURCES TO DESIGNATED FOREIGN TERRORISTS ORGANIZATIONS
      THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ...……….................................................. 39

COUNT IX .................................................................................................................... 39

      HONEST SERVICES FRAUD; SCHEME TO DEFRAUD USING FEDERAL MAIL
      FRAUD; SCHEME TO DEFRAUD USING FEDERAL WIRE FRAUD; FALSE
      INFORMATION AND HOAXES; FRAUDS AND SWINDLES; AND INJUNCTIONS
      AGAINST FRAUD; THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ...……….......................... 39

# TABLE OF CONTENTS

**Page**

COUNT X ......................................................................................................................................  40

      SCHEME TO DEFRAUD USING INTERSTATE WIRE, RADIO, AND TELEVISION
      COMMUNICATIONS; SCHEME TO DEFRAUD USING INTERNATIONAL WIRE,
      RADIO, AND TELEVISION COMMUNICATIONS; MONEY LAUNDERING;
      ESPIONAGE, SABOTAGE, AND OTHER HOSTILE ACTS; AND JOINT CRIMINAL
      ENTERPRISE OF A COMMON PURPOSE TO COMMIT INTERSTATE AND
      INTERNATIONAL CRIMES IN BAD FAITH EVIL MINDED WITH INTENT TO
      IMPEDE, OBSTRUCT, OR INFLUENCE TO ACHIEVE POLITICAL, FINANCIAL,
      OR LEGAL PURPOSES THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ...........................  40

COUNT XI ......................................................................................................................................  40

      SUBJUGATION AND THE ACTION OF BRINGING SOMEONE OR SOMETHING UNDER
      DOMINATION OR CONTROL TO DEFEAT AND GAIN CONTROL OF PEOPLE OR A
      COUNRTY AND RULE THEM IN A WAY THAT ALLOWS THEM NO FREEDOM IN BAD
      FAITH EVIL MINDED WITH INTENT TO IMPEDE, OBSTRUCT, OR INFLUENCE TO
      ACHIEVE POLITICAL, FINANCIAL, OR LEGAL PURPOSES THAT RESULTED IN
      DAMAGES TO PLAINTIFF(S) ...............................................................................................  40

COUNT XII ......................................................................................................................................  41

      NON-CONSENSUAL HUMAN EXPERIMENTION; FEAR OF EARLY DEATH;
      CONSPIRACY TO COMMIT FEAR OF EARLY DEATH; AND POLITICAL
      REPRESSION THAT RESULTED IN DAMAGES TO PLAINTIFF(S) ...............................................  41

**RIGHTS VIOLATED BY DEFENDANT(S) AND RIGHTS CLAIMED BY PLAINTIFF(S)** ..........................  41

**SUM OF DAMAGES DAMADED** ..................................................................................................  45

**VICTIM IMPACT STATEMENT** ..................................................................................................  45

**PRAYER FOR RELIEF** ..................................................................................................................  46

**TRIAL BY JURY DEMAND** ........................................................................................................  47

**UNDER PENALTY OF PERJURY** ..................................................................................................  47

**SUPPORTING CASES** ................................................................................................................  i

1.       Plaintiff(s), JOHN KEITH HEBERT, and INTERNATIONAL DEFENSE CORPORATION, brings this Complaint against Defendant(s) and alleges as follows:

## **NATURE OF ACTION**

### **I.       INTRODUCTION**

2.       COMES NOW Plaintiff(s), JOHN KEITH HEBERT, IC "Plata", President of INTERNATIONAL DEFENSE CORPORATION, and INTERNATIONAL DEFENSE CORPORATION, for this matter is NOW before this Court for TREASON, SEDITION, AND SUBVERSIVE ACTIVITIES (18 U.S.C. §§ 2381-2391); AND COMMUNIST CONTROL LAW AND LEGISLATIVE FINDING OF FACT AND DECLARATION OF NECESSITY (50 U.S.C. §§ 841-844); AND RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (18 U.S.C. §§ 1961-1968); AND ACTION FOR NEGLECT TO PREVENT (42 U.S.C. § 1986); AND COMPENSATION FOR VIOLATIONS OF THE LAW OF WAR ( Law of War § 18.16) COMPLAINT of "Permanent Personal Injury" of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)), and "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

3.       Plaintiff(s) claims of TREASON, SEDITION, AND SUBVERSIVE ACTIVITIES (18 U.S.C. §§ 2381-2391); AND COMMUNIST CONTROL LAW AND LEGISLATIVE FINDING OF FACT AND DECLARATION OF NECESSITY (50 U.S.C. §§ 841-844); AND RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (18 U.S.C. §§ 1961-1968); AND ACTION FOR NEGLECT TO PREVENT (42 U.S.C. § 1986); AND COMPENSATION FOR VIOLATIONS OF THE LAW OF WAR ( Law of War § 18.16) arises from the Defendant(s) illegal use of (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) in the form of Performing (Private Engagement in Hostilities) using (Retaliatory Isolation Techniques) and (Systematic Diminishment Techniques) while (Adhering to and Aiding the Enemy *Substantially-Supporting* a "Hostile, Non-State Armed Group") showing Sympathy *Simultaneously and Concurrently* with the Enemy and Hostility to Plaintiff(s), *"specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

4.       Defendant(s) (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) were *ordered, sanctioned, permitted, and approved* by persons in positions of authority of the Defendant(s) who under all principles of law were under the duty to know about these things and to take steps to terminate or prevent them.

5.       Defendant(s) ( Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) were *conducted* on

Plaintiff(s) who (Did Not Consent).

> "In no case was the experimental subject at liberty of his own free
>
> choice to withdraw from any 'experiment'."

6.     Defendant(s) (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) *caused* (Extraordinary Suffering) and (Superfluous Mental Injury) to Plaintiff(s).

> "In every one of the 'experiments' the subject experienced extreme
>
> pain and torture, and suffered permanent injury, as a direct result of
>
> the 'experiments' and because of 'lack of adequate follow-up care'."

## II.     OVERVIEW OF DEFENDANT(S) MALICIOUS SEDITIOUS CONSPIRACY

7.     When Eric Holder was nominated to be attorney general under Barack Obama, he was asked about possible investigations into officials in the George W. Bush administration responsible for "***Spying on U.S. Citizens***", and approving or ordering the "***Use of Torture***". Holder said, "*We don't want to criminalize "policy differences" that might exist between the outgoing administration and the administration that is about to take over. We certainly don't want to do that.*" Obama himself echoed these sentiments, saying, "*We need to look forward as opposed to looking backwards.*" By 2012, Holder had closed the investigations into torture without any charges ever being brought.

8.     On Saturday, 03 MAY 2014, Defendant(s), the CIA Command in Afghanistan, conspired with Defendant(s), my Employer's Management in Afghanistan, to Torture me, Plaintiff(s), and gave me, Plaintiff(s), a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

9.     On Friday, 01 AUG 2014, the United States President Barack Hussein Obama II, is (On-The-Record) Admitting: **"Yeah, *We* Tortured Some Folks".**

10.     On Friday, 02 OCT 2015, Defendant(s), the CIA Psychologist, did not include the "specific stressor" in my, Plaintiff(s), medical record in Afghanistan, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required*

*threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

11.     On Friday, 02 OCT 2015, Defendant(s), my Employer's Management in Afghanistan, refused to file my, Plaintiff(s), medical record in Afghanistan causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

12.     On Sunday, 04 OCT 2015, Defendant(s), the Office of CIA Operations in Las Vegas, Nevada, calculated and conspired to assault me, Plaintiff(s), with deadly weapons upon returning home CONUS from Afghanistan, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

13.     On Tuesday, 03 NOV 2015, Defendant(s), my Employer's Defense Base Act Insurance Carrier, denied me, Plaintiff(s), my Worker's Compensation Claim and Urgent Medical Care and Urgent Wage Compensation, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

14.     On 13 MAY 2016, the Vice Chairman of the Senate Select Committee on Intelligence, Dianne Feinstein, wrote a letter to Defendant(s), the CIA Director John Owen Brennan, for an immediate prompt response to provide a new copy of the "Study" (Torture Report) to the CIA OIG, which would ensure that DOJ lawyers could inform federal judges, that the (Status Quo) was

3

"adhered to" and has been "restored" since the Office of the CIA Inspector General had misplaced and/or accidentally destroyed its electronic copy and disk of the Senate Select Committee on Intelligence's full 6,700-page classified Study (Torture Report) of the CIA Detention and Interrogation Program.

15.      In AUG 2017, Defendant(s), my former Defense Base Act attorney, denied me, Plaintiff(s), of my, Plaintiff(s), right to file for a hearing date for my, Plaintiff(s), Defense Base Act Worker's Compensation Claim 2 years after filing my, Plaintiff(s), Claim, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). Defendant(s), Mr. William David Turley, my former DBA attorney, pleaded guilty in federal court on Wednesday, 30 OCT 2019 for Enticement and Coercion to Engage in Prostitution.

16.      On Friday, 02 FEB 2018, I, Plaintiff(s), became homeless and in the same month of FEB 2018, Defendant(s), the CIA Director John Owen Brennan, was hired by the media and went on television accusing certain people of Treason when, In-Fact, and In-Secret, His Intelligence Agency and His Command in Afghanistan committed Treason against me, Plaintiff(s), causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

17.      Defendant(s), the Post Office, lost multiple pieces of my, Plaintiff(s), mail which included my, Plaintiff(s), complaint, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

18. Defendant(s), the California Franchise Tax Board, seized my, Plaintiff(s), bank account for taxes I, Plaintiff(s), does not owe at a time in which I was denied my Worker's Compensation Claim and Urgent Medical Care and Urgent Wage Compensation, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

19. Defendant(s), the Internal Revenue Service, and it's collecting contractor, are demanding that I, Plaintiff(s), pay taxes for the year when I, Plaintiff(s), was getting Tortured in Afghanistan, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

20. Defendant(s) committed "Crimes involving Moral Turpitude, Depravity, and Wickedness" that (Shocks the Conscience of Mankind) and then committed "Abuse of Process" which accomplished some improper purpose that is "*collateral*" to the proper object of the process and that "*offends*" justice (*fraudulent and malicious manipulation of the process itself*). Defendant(s) or any subsidiary organization by reason of the laws of the United States or any political subdivision thereof, cannot have defenses to these "Morally Indefensible Crimes" with "Elite Impunity" which go beyond justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

21. Plaintiff(s) hereby is informed, believes, and thereon alleges, and hereby HOLDS Defendant(s) as **(Unprivileged War Belligerents and Co-Conspirators)** to an (Armed Conflict) in Afghanistan, which **(International Law)** "Indicates" the Status as being, (a **"Rebellion"** against a "Constituted Authority" governed by the **(Laws of War)**).

## III.        DAMAGES TO PLAINTIFF(S)

22.        Plaintiff(s) received "Permanent Personal Injury" of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) and "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

23.        Plaintiff(s) was diagnosed with (Adjustment Disorder), (Anxiety Disorder), (Depressed Mood Disorder), (Post Traumatic Stress Disorder), (Panic Disorder), and (Situational Depression Disorder) from severe pain and suffering from (Psychological and Emotional Abuse) and (Prolonged Mental Harm) caused by the Defendant(s).

24.        Plaintiff(s) "Lost" HIS (SELF), (Dignity of Self), (Complete Trust in Others), (Positive Mindset of Self), (Personal Interest of Self), (Emotional Stability of Self), (Security of Self), (Comfort in Living with Self), (Self-Esteem), (Self-Worth), (International Corporation), (Earnings), (Earning Potential), (Opportunities), (Employment), (Career), (Livelihood), (SEP IRA Account), (Checking Account), (Savings Account), (Credit), (Foreclosed on House), (Las Vegas Residence), (Personal Possessions), (3 cars and a motorcycle), (Nevada Driver's License), (State of Nevada Residency), (Substantive Guarantees), (Liberties and Freedoms), causing (Avoidance of Social Interaction), (Sensory Sensitivity), (Extra Sensory Perception), (Remote Viewing), (Intrusive Thoughts) and (Extreme Sensitivity) to Negative Environments, (Major Sleep Deprivation), (Prolonged Isolation), (Constantly Forgetful) and (Completely Hopeless), (Restless) and (Exhausted), (In Existential Despair) and (In Existential Distress) on a daily basis, (In Existential Crisis), (Introspection of Self), (Frustrated) and (Very Irritated and Annoyed), (Hurt) and (Still in Shock), (Completely Lost) and (All Alone), (Very Scared) and (Totally Vulnerable), (Threatened), (Punished), (Abused), (Discriminated Against), (Assaulted), (Treated Inhumanely), (Tortured), (Enslaved), (Subjugated), (Terrorized), (Harmed), (Injured), (Degraded), (Defeated), (Oppressed), (Psychologically Repressed), (Emotionally Repressed), (Spied on), (Betrayed), (Overly Dominated), (Controlled), (Governed), (Deprived), (So Ashamed), (Completely Humiliated), (Very Violated) and (So Disturbed), (Devastated), (Destroyed), (Taken Advantage of), (Disgusted), (Disgraced), (Very Disappointed with Self), (Very Dissatisfied with one's life), (Terrifying Nightmares), (Paralyzed) and in a (State of Coma), (Can't Run Away from Self, which have to live with Forever), and (FEAR OF EARLY DEATH).

25.        Defendant(s) (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) were *conducted* on Plaintiff(s) who (Did Not Consent).

> "In no case was the experimental subject at liberty of his own free
> choice to withdraw from any 'experiment'."

26.        Defendant(s) (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) *caused* (Extraordinary Suffering) and (Superfluous Mental Injury) to Plaintiff(s).

> "In every one of the 'experiments' the subject experienced extreme
> pain and torture, and suffered permanent injury, as a direct result of
> the 'experiments' and because of 'lack of adequate follow-up care'."

## JURISDICTION AND VENUE

**I.      IN UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA**

27.      Plaintiff(s), JOHN KEITH HEBERT, was born in Vermilion Parish, Louisiana, on 21 MAR 1973, and currently resides at 4711 Renie Road, Erath, Vermilion Parish, Louisiana 70533, and the United States District Court for the Western District of Louisiana has Jurisdiction and Venue is appropriate.

28.      The United States District Court for the Western District of Louisiana has Jurisdiction over this Civil Action because the Plaintiff's Claims arise under Federal Law of **TREASON, SEDITION, AND SUBVERSIVE ACTIVITIES (18 U.S.C. §§ 2381-2391); AND COMMUNIST CONTROL LAW AND LEGISLATIVE FINDING OF FACT AND DECLARATION OF NECESSITY (50 U.S.C. §§ 841-844); AND RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (18 U.S.C. §§ 1961-1968); AND ACTION FOR NEGLECT TO PREVENT (42 U.S.C. § 1986); AND COMPENSATION FOR VIOLATIONS OF THE LAW OF WAR (Law of War § 18.16)** and the United States District Court for the Western District of Louisiana has Jurisdiction and Venue is appropriate.

## PARTIES

**PLAINTIFF(S)**

**I.      JOHN KEITH HEBERT**

29.      Plaintiff(s), JOHN KEITH HEBERT, IC "Plata", President of INTERNATIONAL DEFENSE CORPORATION, entered into an "Independent Contractor Service Agreement" with Defendant(s), (10), and an "Independent Sub-Contractor Service Agreement" with Defendant(s), (1), herein both referred to as (International Contract of Agreement), to provide contracted and subcontracted "Private Security Services" in Afghanistan.

30.      Plaintiff(s) have fully complied with the terms of the (International Contract of Agreement) in reference to the contracted and subcontracted "Private Security Services" provided in Afghanistan.

**II.     INTERNATIONAL DEFENSE CORPORATION**

31.      Plaintiff(s), INTERNATIONAL DEFENSE CORPORATION, a Nevada Corporation, entered into an "Independent Contractor Service Agreement" with Defendant(s), (10), and an "Independent Sub-Contractor Service Agreement" with Defendant(s), (1), herein both referred to as (International Contract of Agreement), to provide contracted and subcontracted "Private Security Services" in Afghanistan.

32.      Plaintiff(s) have fully complied with the terms of the (International Contract of Agreement) in reference to the contracted and subcontracted "Private Security Services" provided in Afghanistan.

**DEFENDANT(S)**

**I.      (1) The United States Central Intelligence Agency, and (2) the Entire CIA Command to Afghanistan, and (3) the CIA Deputy Chief of Support DCOS Christine Massowd "Ricochet" / "Schroeder", and**

**(4) the CIA Chief of Security COS "Watchdog", and (5) the CIA Regional Medical Officer / Psychologist Maria L. Dittrich, PhD "Westside", and (6) the CIA Kabul Base Area Security Officer (ASO) in Afghanistan "Pebbles", and (7) the CIA Sulaymaniyah Base Area Security Officer (ASO) in Iraq, "Tiger", and (8) the CIA Director John Owen Brennan.**

33.     Defendant(s), (1), entered into an (International Contract of Agreement) with Plaintiff(s) to provide subcontracted "Private Security Services" in Afghanistan.

34.     Defendant(s), (1) – (8), have failed to comply with the terms of the (International Contract of Agreement), in reference to the subcontracted "Private Security Services" provided in Afghanistan by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (8), defaulted by conducting (ASSAULT WITH WEAPONS OF MASS DESTRUCTION); (TORTURE); (SLAVERY); (AIDING THE ENEMY); (WAR CRIMES); (NON-CONSENSUAL HUMAN EXPERIMENTATION); (WAR TREASON); (SUBJUGATION AND THE ACTION OF BRINGING SOMEONE OR SOMETHING UNDER DOMINATION OR CONTROL TO DEFEAT AND GAIN CONTROL OF PEOPLE OR A COUNRTY AND RULE THEM IN A WAY THAT ALLOWS THEM NO FREEDOM); AND (HOSTIS HUMANI GENERIS) HELD AS (JUS COGENS) APPLYING (ERGA OMNES) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). The date of default was on or about 03 MAY 2014.

**II.   (9) The United States Central Intelligence Agency, and the Las Vegas Office of the CIA Operations.**

35.     Defendant(s), (9), calculated and conspired to assaulted me, Plaintiff(s), with deadly weapons upon returning home CONUS from Afghanistan, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

**III.   (10) Xe Services LLC, Academi, Constellis Holdings Inc., Triple Canopy Inc., and Apollo Global Management LLC Corporate Headquarters, and (11) the Academi Management to Afghanistan, and (12) RC-1 "Flathead", and (13) RC-1 "Shrapnel", and (14) C-1 Ryan M. Scott "Bankhead", and (15) C-1 Larry H. Heppner "Bull", and (16) TL Paul Detwiler "Noodler", and (17) TL Ian M. Pearson "Bryant".**

36.     Defendant(s), (10), entered into an (International Contract of Agreement) with Plaintiff(s) to provide contracted "Private Security Services" in Afghanistan.

37.     Defendant(s), (10) – (17), have failed to comply with the terms of the (International Contract of Agreement), in reference to the contracted "Private Security Services" provided in Afghanistan by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (10) – (17), defaulted by conducting (ASSAULT WITH WEAPONS OF MASS DESTRUCTION); (TORTURE); (SLAVERY); (AIDING THE ENEMY); (WAR CRIMES); (NON-CONSENSUAL HUMAN EXPERIMENTATION); (WAR TREASON); (SUBJUGATION AND THE ACTION OF BRINGING SOMEONE OR SOMETHING UNDER DOMINATION OR CONTROL TO DEFEAT AND GAIN CONTROL OF PEOPLE OR A COUNRTY AND RULE THEM IN A WAY THAT ALLOWS THEM NO FREEDOM); AND (HOSTIS HUMANI GENERIS) HELD AS (JUS COGENS) APPLYING (ERGA OMNES) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). The date of default was on or about 03 MAY 2014.

### IV. (18) The Starr Indemnity and Liability Company, and Gallagher Bassett Services, and (19) Senior Resolution Manager Teresa Martin.

38.     Defendant(s), (18) and (19), denied me, Plaintiff(s), of my Defense Base Act Worker's Compensation Claim and Urgent Medical Care and Urgent Wage Compensation for over 2 years and committed "Abuse of Process" which accomplished some improper purpose that is *"collateral"* to the proper object of the process and that *"offends"* justice (*fraudulent and malicious manipulation of the process itself*) In-Bad-Faith and Enrichment causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

### V. (20) The Turley Law Firm and (21) William David Turley.

39.     Defendant(s), (20) and (21), denied me, Plaintiff(s), of my, Plaintiff(s), right to file for a hearing date for my, Plaintiff(s), Defense Base Act Worker's Compensation Claim 2 years after filing my, Plaintiff(s), DBA Claim, committing "Abuse of Process" which accomplished some improper purpose that is *"collateral"* to the proper object of the process and that *"offends"* justice (*fraudulent and malicious manipulation of the process itself*) In-Bad-Faith and Enrichment causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and

(Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). Defendant(s), (19) Mr. William David Turley, my former Defense Base Act attorney, pleaded guilty in federal court on Wednesday, 30 OCT 2019 for Enticement and Coercion to Engage in Prostitution.

### VI.   (22) The State of California, and the Office of the Franchise Tax Board.

40.        Defendant(s), (22), seized my, Plaintiff(s), bank account for taxes I, Plaintiff(s), does not owe, at a time in which I was denied my Defense Base Act Worker's Compensation Claim and Urgent Medical Care and Urgent Wage Compensation, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

### VII.   (23) The United States Postal Service Headquarters.

41.        Defendant(s), (23), lost multiple pieces of my, Plaintiff(s), mail which included my, Plaintiff(s), complaint, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

### VIII.   (24) The United States Internal Revenue Service.

42.        Defendant(s), (24), are demanding that I, Plaintiff(s), pay taxes for the year when I, Plaintiff(s), was getting Tortured in Afghanistan, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that

went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

## IX. (25) The United States Department of the Treasury.

43.      Defendant(s), (25), are demanding that I, Plaintiff(s), pay taxes for the year when I, Plaintiff(s), was getting Tortured in Afghanistan, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

## X. (26) And all other found Co-Conspirators / Principles.

44.      Plaintiff(s) respectfully request an award of full civil relief against all other found Co-Conspirators / Principles which acts are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" per RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (18 U.S.C. §§ 1961-1968); AND ACTION FOR NEGLECT TO PREVENT (42 U.S.C. § 1986); AND COMPENSATION FOR VIOLATIONS OF THE LAW OF WAR (Law of War § 18.16).

## FACTS OF ALLEGATIONS AND ITEMS OF EVIDENCE

45.      Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 44 above of this Complaint and incorporates the same paragraphs below as though set forth fully herein.

46.      On Monday, 28 JAN 2013, while employed with MVM Inc., on contract deployment to Iraq of 28 JAN 2013 – 03 APR 2013, at Irbil Base upon arriving in Iraq, I was told by my RC-1 Country Lead, "Pedro/Guapo", that the Central Intelligence Agency (CIA) Area Security Officer (ASO) of Sulaymaniyah Base in Iraq, "Tiger", had classified me as DNR (Do Not Return) to Sulaymaniyah Base in Iraq, where I was the C-1 Site Supervisor for the past five "5" years. "Pedro/Guapo" then asked me what happen since "Tiger" refused to give "Marcus", the CIA GRS V-1, a reason why I was being terminated from my C-1 Site Supervisor position.

47.      On Friday, 23 AUG 2013, while employed with MVM Inc., on contract deployment to Iraq of 23 AUG 2013 – 30 OCT 2013, at Irbil Base upon arriving in Iraq, I was told by my RC-1 Country Lead, "Pedro/Guapo", that the Central Intelligence Agency (CIA) Chief of Base (COB) of Irbil Base in Iraq, Christine Massowd "Ricochet", had classified me as DNR (Do Not Return) to Irbil Base in Iraq, right after I was a "Whistleblower" to Criminal Activity and where I was recently promoted to the

11

RC-1 Country Lead position, rotating with "Pedro/Guapo" after being (Wrongfully Terminated) from my C-1 Supervisor position at Sulaymaniyah Base. I was told by the CIA GRS V-1 "Marcus" that Christine Massowd "Ricochet" tried to (Wrongfully Terminate) me from the country, my contract, and the "program" all together, but he, CIA GRS V-1 "Marcus", stopped that from happening and sent me to another CIA Base in northern Iraq, Dahuk, and not home to the United States.

48.     On Monday, 30 SEP 2013, while employed with SOC Inc., right after they won the new contract from MVM Inc., on contract deployment to Iraq of 23 AUG 2013 – 30 OCT 2013, at Dahuk Base in Iraq, SOC's Program Manager, Billy Conner, told me that the Central Intelligence Agency (CIA) Chief of Base (COB) of Irbil Base in Iraq, Christine Massowd "Ricochet", wanted me fired. I never received another deployment with SOC Inc. after this. I had just purchased a house in Las Vegas, Nevada, at 5917 Big Horn View Street, Las Vegas, Nevada 89031, in November 2013, putting down $40K, and I was living off all of my savings. This became a very stressful time for me because I was not prepared financially to stop deploying. I became very depressed and I suffered from anxiety from losing my job. I felt "Threatened", "Targeted", and "Betrayed" by both the CIA and SOC Inc.

49.     Due to me be "Wrongfully Terminated" from my Employer's Contract and the CIA's Sub-Contract and Program in Iraq, the Central Intelligence Agency (CIA) Chief of Base (COB) of Irbil Base in Iraq, Christine Massowd "Ricochet", "Intentionally" forced me to be (Wrongfully Reassigned) to a different duty station, the Secondary Area of Operations (AO) Theater of Afghanistan, after she had me (Wrongfully Terminated) from my Employer SOC Inc. in the Main AO Theater of Iraq. I felt "Threatened", "Targeted", and "Betrayed" by both the CIA and SOC Inc. (CIA GRS "Horseshoe", CIA GRS V-1 "Marcus", and the CIA "COTOR" all can attest to this.)

50.     In FEB 2014, while I was home unemployed and (Wrongfully Terminated) from the CIA "Cougar" Program in Iraq, the CIA Sub-Contract, and my Employer's Contract, she, Christine Massowd "Ricochet", then tried to block my Reassignment Transfer from the Main AO Theater of Iraq to the Secondary AO Theater of Afghanistan per CIA GRS V-1 "Marcus". I felt "Threatened", "Targeted", and "Betrayed" by both the CIA and SOC Inc.

51.     On Tuesday, 04 MAR 2014, when I tried to crossover from SOC Inc. in the Main AO Theater of Iraq to Xe Services LLC "Academi" in the Secondary AO Theater of Afghanistan, she, Christine Massowd "Ricochet", contacted XE's front office and told them that I should not be hired. I felt "Threatened", "Targeted", and "Betrayed" by both the CIA and SOC Inc. (XE "Academi" recruiter Stephen J. Pinkham "Pink" and XE's RC-1 Country Lead Supervisor in Afghanistan "Flathead" with can attest to this).

52.     On Tuesday, 04 MAR 2014, Xe Services LLC "Academi" recruiter Stephen J. Pinkham "Pink" advised me by email of getting some "Push Back" and emails from some "Haters" in CIA Headquarters towards me. I then replied to his email on Wednesday, March 5, 2014 stating that I was not surprised and I then advised him and Academi's front office that I was a "Whistleblower" while deployed with SOC Inc., well before I was hired with Xe Services LLC "Academi". I felt "Threatened", "Targeted", and "Betrayed" by both the CIA and SOC Inc. (See ITEM 1 upon discovery)

53.     On Saturday, 03 MAY 2014, while employed with Adademi on my first contract deployment to Afghanistan of 11 APR 2014 – 12 JUL 2014, at Kabul Base in Afghanistan, I was told by my employer's management C-1 Site Lead Ryan M. Scott "Bankhead", and RC-1 Country Lead "Flathead", that Central Intelligence Agency (CIA) Deputy Chief of Support (DCOS) of the CIA "Command" in Afghanistan, Christine Massowd, now promoted and with changed callsign to "Schroeder", and the Area Security Officer (ASO) "Pebbles", revoked my "Driving Privileges" on contract deployment to Afghanistan 11 APR 2014 – 12 JUL 2014, just after "Passing" the GRS Self-Drive Course "AFAM" (Area Familiarization) in Afghanistan. This is *"Retaliatory Isolation Techniques"* and *"Systematic Diminishment Techniques"* (Torture Techniques) used on me. I felt "Threatened", "Targeted", and "Betrayed" by both the CIA and SOC Inc., but now also my current Employer Academi. This very disturbing pattern of abuse caused me enormous amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety.

54.     I received a Statement from Academi Management in Afghanistan, C-1 Site Lead Ryan M. Scott "Bankhead", dated 25 AUG 2015, supporting the fact that they revoked my "Driving Privileges" in MAY 2014. (See ITEM 2 upon discovery)

55.     On Friday, 01 AUG 2014, the President Barack Hussein Obama II, is (On-The-Record) Admitting, *"Yeah, We Tortured Some Folks"*, which was right (After) I was "Starting" to get (Tortured)  His CIA Command in Afghanistan. I felt "Threatened", "Targeted", and "Betrayed" by the President Barack Hussein Obama II. This very disturbing pattern of abuse caused me enormous amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety. (See ITEM 3 upon discovery)

56.     On Wednesday, 24 SEP 2014, while employed with Adademi on my second contract deployment to Afghanistan of 24 SEP 2014 – 02 JAN 2015, at Kabul Base in Afghanistan, the CIA Command in Afghanistan and my Employer's Management in Afghanistan continued to "Wrongfully Revoked" my "Driving Privileges" on contract deployment to Afghanistan 24 SEP 2014 – 02 JAN 2015, using *"Retaliatory Isolation Techniques"* and *"Systematic Diminishment Techniques"* (Torture Techniques) against me. I felt "Threatened", "Targeted", and "Betrayed" by the President, the CIA, SOC Inc., and Academi. This very disturbing pattern of abuse caused me enormous amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety.

57.     On Friday, 02 JAN 2015, I received Academi's Performance Evaluation completed by Academi Management in Afghanistan Site C-1 "Snackpack", at end of my contract deployment to Afghanistan 24 SEP 2014 – 02 JAN 2015. (See ITEM 4 upon discovery)

58.     On Thursday, 26 MAR 2015, while employed with Adademi on my third contract deployment to Afghanistan of 26 FEB 2015 – 05 JUN 2015, at Kabul Base in Afghanistan, the Central Intelligence Agency (CIA) Command in Afghanistan, and

the CIA Afghanistan Chief of Security (COS) "Watchdog", and the CIA Afghanistan Deputy Chief of Support (DCOS) Christine

Massowd "Schroder", and other CIA Command Chiefs in Afghanistan, and Academi Management in Afghanistan, and C-1 Larry

H. Heppner "Bull", and TL Paul Detwiler "Noodler",  "Wrongfully Terminated" me from a CIA Security Post Position and

"Wrongfully Revoked" my use of the public phones and computers "Communication Privileges" shortly after a nearby "Large

Scale Car Bomb" on Wednesday, 25 MAR 2015, which targeted the Presidential Palace, using the deadly action of the enemy

against me (Aiding and Abetting the Enemy) and (Assault with Weapons of Mass Destruction) and preventing me from

contacting my family. They also continued to "Wrongfully Revoked" my "Driving Privileges" on contract deployment to

Afghanistan 26 FEB 2015 – 05 JUN 2015 using ***"Retaliatory Isolation Techniques"* and *"Systematic Diminishment***

***Techniques"* (Torture Techniques)** against me. I felt "Threatened", "Targeted", and "Betrayed" by the President, the CIA, SOC

Inc., and Academi. This very disturbing pattern of abuse and the action of bringing someone or something under domination or

control to defeat and gain control of people or a country and rule them in a way that allows them no freedom in bad faith evil

minded (Subjugation) caused me enormous amount of fear, panic, terror, distress, anger, rage, depression, social and emotional

anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my

overall health and safety, causing intentional infliction of Emotional Distress, Post-Traumatic Stress Disorder, Panic Disorder,

Adjustment Disorder, Depressed Mood Disorder, Anxiety Disorder, and Situational Depression Disorder. (See ITEM 5 upon

discovery)

59.      On Friday, 05 JUN 2015, I received Academi's Performance Evaluation completed by Academi Management in

Afghanistan Site C-1 "Snackpack", at end of contract deployment to Afghanistan 26 FEB 2015 – 05 JUN 2015. (See ITEM 6

upon discovery)

60.      On Monday, 17 AUG 2015, I received an email from Academi Management in Afghanistan, TL Paul Detwiler

"Noodler", stating he attached his Statement, but prefers I do not use it, writing, "you know how the game is played. If this gets

ugly, I am going to get hammered by the company and client (CIA)." (See ITEM 7 upon discovery)

61.      Plaintiff(s) received a Statement from Academi Management in Afghanistan, TL Paul Detwiler "Noodler", dated 18

AUG 2015, supporting the fact that they (Terminated) me from my Security Post and (Revoked) my "Communication

Privileges". (Noodler's date of this event taking place is off by a month and a day. Academi's Site C1 "Bull" can attest to this

event actually taking place on Thursday, 26 MAR 2015, just under a month after I briefed him in his room on Tuesday, 03 MAR

2015, as an FYI, that I was getting "Retaliated" against by CIA Upper Management for being a "Whistleblower" in Iraq.) (See

ITEM 8 upon discovery)

62.      On Friday, 07 AUG 2015, while employed with Adademi on my fourth contract deployment to Afghanistan of 02 JUL

2015 – 02 OCT 2015, at Kabul Base in Afghanistan, the Central Intelligence Agency (CIA) Command in Afghanistan, and

the CIA Afghanistan Chief of Security (COS) "Watchdog", and the CIA Afghanistan Deputy Chief of Support (DCOS) Christine

Massowd "Schroder", and other CIA Command Chiefs in Afghanistan, and Academi Management in Afghanistan, and C-1 Larry

H. Heppner "Bull", and TL Ian M. Pearson "Bryant", "Wrongfully Terminated" me from the (CIA Base) in Kabul, Afghanistan, on the same day right after a nearby "Massive Large-Scale Truck Bomb," which targeted the Afghanistan Intelligence Academy Ministry of Defense, using the deadly action of the enemy against me (Aiding and Abetting the Enemy) and (Assault with Weapons of Mass Destruction). They also continued to "Wrongfully Revoked" my "Driving Privileges" and "Communication Privileges" on contract deployment to Afghanistan 02 JUL 2015 – 02 OCT 2015 using ***Retaliatory Isolation Techniques*** **and "*Systematic Diminishment Techniques*" (Torture Techniques)** against me. I felt "Threatened", "Targeted", and "Betrayed" by the President, the CIA, SOC Inc., and Academi. This very disturbing pattern of abuse and the action of bringing someone or something under domination or control to defeat and gain control of people or a country and rule them in a way that allows them no freedom in bad faith evil minded (Subjugation) caused me enormous amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, causing intentional infliction of Emotional Distress, Post-Traumatic Stress Disorder, Panic Disorder, Adjustment Disorder, Depressed Mood Disorder, Anxiety Disorder, and Situational Depression Disorder. (See ITEM 9 upon discovery)

63.      On Saturday, 08 AUG 2015, a day after the nearby "Massive Large-Scale Truck Bomb," which targeted the Afghanistan Intelligence Academy Ministry of Defense and leaving a 30 foot deep creator in the road, we received creditable intelligence that the front gate to our base was to be bombed that night. Even though I was fired from the CIA Program, my CIA Sub-Contract, and my Employer's Contract, I was put on duty that night at the front gate. I was forced to protect the lives of the very people who have been Torturing me for the past 2 years and the CIA Command and my Employer's Management in Afghanistan intentionally calculated to put my life in danger to the creditable intelligence they just received.

64.      At 1000 am on Monday, 10 AUG 2015, while employed with Adademi on my fourth contract deployment to Afghanistan of 02 JUL 2015 – 2 OCT 2015, at Kabul Base in Afghanistan, I started "Clinical Sessions" with the CIA Afghanistan Regional Medical Officer / Psychologist Maria L. Dittrich, PhD "Westside", due to this very disturbing pattern of abuse.

65.      I received a Statement from Academi Management in Afghanistan, TL Ian M. Pearson "Bryant", dated 12 AUG 2015, supporting the fact that they (Wrongfully Terminated) me from a CIA Base in Kabul, Afghanistan. I was (Wrongfully Terminated) from CIA Site on Friday, 07 AUG 2015. I was flown by Helicopter to another CIA Base Site on Wednesday, 12 AUG 2015, because it was to "Dangerous" to drive out by vehicle on Friday, 07 AUG 2015. "Marcus" intervened again days later and prevented me from being fired and sent home. (See ITEM 10 upon discovery)

66.      On Saturday, 08 AUG 2015, the day after I was being Tortured, the CIA Command, and Academi Management, made me a "We Love Plata" cake in their "Guilt". They do NOT love me. (See ITEM 11 upon discovery)

67.      I have a copy of my "Independent Contractor Service Agreement" (International Contract of Agreement) with my Employer Academi Inc., which they (Criminally Breached) In-Bad-Faith (Evil-Minded) by Violating the (United States

Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature), and my "Non-Derogable Inalienable Rights". (See ITEM 12 upon discovery)

68.     I have a copy of my "Nevada State Business License" for (International Defense Corporation), a Nevada Corporation. (See ITEM 13 upon discovery)

69.     On Friday, 28 AUG 2015, while employed with Adademi on my fourth contract deployment to Afghanistan of 02 JUL 2015 – 02 OCT 2015, at Kabul Base in Afghanistan, I emailed the CIA, and  CIA Afghanistan Regional Medical Officer / Psychologist Maria L. Dittrich, PhD, "Westside", advising her of me abruptly awakening having thoughts of CIA employees opening the door to my room and shooting me with their pistol unloading their entire magazine into my body. This is evidence that I was showing serious symptoms to the fact that I was being (Tortured) just weeks before on Friday, 07 AUG 2015. (See ITEM 14 upon discovery)

70.     On Thursday, 01 OCT 2015, while employed with Adademi on my fourth contract deployment to Afghanistan of 02 JUL 2015 – 02 OCT 2015, at Kabul Base in Afghanistan, I email Academi's front office, to notify them that I was "Canceling" my next scheduled contract deployment of 02 NOV 2015 – 29 JAN 2016, per the CIA Afghanistan Regional Medical Officer / Psychologist Maria L. Dittrich, PhD "Westside", and that I was looking into Defense Base Act (DBA) Workman's Compensation and Legal Counsel options because I was a "Whistleblower" that had been getting harassed and targeted by the CIA Upper Country Management for the past 2 years. (See ITEM 15 upon discovery)

71.     On Friday, 02 OCT 2015, while employed with Adademi on my fourth contract deployment to Afghanistan of 02 JUL 2015 – 02 OCT 2015, at Kabul Base in Afghanistan, I received an email from the CIA Afghanistan Regional Medical Officer / Psychologist Maria L. Dittrich, PhD "Westside", stating that she attached my Medical Record so I can apply for Workman's Compensation through my company's Defense Base Act (DBA) insurance. She stated that she did not mention the "Specific Stressor". (See ITEM 16 upon discovery)

72.     On Friday, 02 OCT 2015, while employed with Adademi on my fourth contract deployment to Afghanistan of 02 JUL 2015 – 02 OCT 2015, at Kabul Base in Afghanistan, I received a Medical Record from the CIA Afghanistan Regional Medical Officer / Psychologist Maria L. Dittrich, PhD "Westside", diagnosing me with an "Unspecified Anxiety Disorder" but "intentionally" did not mention the "Specific Stressor" and refused to document the evidence needed for me to qualify for "Urgent Medical and Urgent Wage Compensation", and as evidence for my "Criminal and Civil" cases against all the Defendant(s). (See ITEM 17 upon discovery)

73.     On Friday, 02 OCT 2015, I received a Medical Record from the CIA Afghanistan Regional Medical Officer / Psychologist Maria L. Dittrich, PhD "Westside", on 02 OCT 2015 showing both that I received a Mental Injury and the inconsistency with "stating the cause of an injury" when the cause of this specific injury was "Intentionally Calculated" by the CIA Command and my Employer's Management in Afghanistan.

74.       I have a Medical Record from a previous physical injury in Afghanistan on Wednesday, 21 MAY 2014 to show that "stating the cause of an injury" to be common practice by the CIA's Medical Staff. (See ITEM 18 upon discovery)

75.       I have another Medical Record from a previous physical injury in Afghanistan on Tuesday, 12 MAY 2015 to show that "stating the cause of an injury" to be common practice by the CIA's Medical Staff. (See ITEM 19 upon discovery)

76.       On Friday, 02 OCT 2015, while employed with Academi on my fourth contract deployment to Afghanistan of 02 JUL 2015 – 02 OCT 2015, at Kabul Base in Afghanistan, I gave Academi's Management in Afghanistan, and RC-1 Country Lead "Shrapnel", my Medical Record to file for Medical and Wage Compensation to which "Shrapnel" said "I'm not filing that" and refused to document the evidence needed for me to qualify for "Urgent Medical and Urgent Wage Compensation", and as evidence for my "Criminal and Civil" cases against them.

77.       On the morning of Sunday, 04 OCT 2015, upon returning home CONUS to 5917 Big Horn View Street, North Las Vegas, Nevada 89031, from contract deployment to Afghanistan 02 JUL 2015 – 02 OCT 2015, I was (Assaulted with Deadly Weapons) calculated by the North Las Vegas Police Department and the CIA Las Vegas Office of the CIA Operations. I was aware of this happening to my co-workers when they returned home CONUS from CIA deployments overseas as a co-worker shot himself in the head killing himself upon returning home while having the police surround his home with guns drawn. This criminal act is in direct connection with the criminal acts committed overseas in Afghanistan. This very terrifying act caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety to worsen further, causing me **(FEAR OF EARLY DEATH)**. (See ITEM 20 upon discovery)

78.       I have eighteen "18" pages of Text Messages I had with Mark Hardy "Marcus", (571)-722-7384, a CIA employee that is one of my witnesses for the criminal acts which they took against me in Kabul Afghanistan in 2014 - 2015, to all the way back in Iraq in 2013, which shows additional evidence for my Defense Base Act, and Criminal and Civil cases. (See ITEM 21 upon discovery)

79.       I received a letter dated Monday, 26 OCT 2015, by the Department of Labor, stating they received a report of my injury I sustained on 02 OCT 2015 in Afghanistan.  It states that my employer, "Academi" – Constellis Group, Inc. / Triple Canopy, or its insurance company, Star Indemnity / Gallagher Bassett Services, should pay for medical treatment required for my injury and if I lost more than three "3" days from work and sustained wage loss, my employer or its insurance company should pay me compensation for that lost time. (See ITEM 22 upon discovery)

80.       I received a letter of Notice of Controversion of Right to Compensation dated Tuesday, 03 NOV 2015, from Teresa Martin, Senior Resolution Manager with Starr Indemnity / Gallagher Bassett Services, stating that my Entire Claim is Controverted because of no evidence of a causally related accident or injury, and no medical to support a causally related injury, or compensable accident. (See ITEM 23 upon discovery)

81.       I have a copy of my Defense Base Act (DBA) Workman's Compensation Contract with my employer "Academi" –

Constellis Group, Inc. / Triple Canopy, who, "Criminally Breached" In-Bad-Faith (Evil- Minded) since they are responsible for

my Mental Injuries and Refuse to Approve my Urgent Medical and Urgent Wage Compensation. (See ITEM 24 upon discovery)

82.      On 19 NOV 2015, my attorney the Turley Law Firm filed a Department of Labor Form LS-203 Employee's Claim for

Compensation stating in writing that the OWCP No. was UNASSIGNED when in fact it was ASSIGNED a OWCP No. 13-

303636 on 26 OCT 2015 by the Department of Labor. (See ITEM 25 upon discovery)

83.      On Saturday, 09 JAN 2016, my condition worsened when I fell into a (Deep-Shock) from "Extreme-Betrayal"

causing me Further Severe Pain and Suffering from (Psychological and Emotional Abuse) and (Prolonged Mental Harm) of

"Superfluous Mental Torture".

84. .    On Friday, 22 JAN 2016, I received a Physician Statement from Jacqueline B. Panish, Ph.D., Licensed Clinical

Psychologist, in Las Vegas, Nevada, stating that I was refused treatment by her on 22 JAN 2016, after reaching out to her on my

own after being Denied my "Right" to receive my Defense Base Act Workman's Urgent Medical and Urgent Wage

Compensation after returning home from my deployment of being (Mentally Tortured), which contributed to make my condition

"Worsen" Further. (See ITEM 26 upon discovery)

85.      On Wednesday, 27 JAN 2016, I started weekly Clinical Sessions with Licensed Professional Clinical Consular, Mike

Waller, (702) 930-8562, with Healing Minds Behavioral Health Services in Las Vegas, Nevada, (702) 432-6463, due to this very

disturbing pattern of abuse, which caused me enormous amount of fear, panic, terror, distress, anger, rage, depression, social and

emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and

toll on Plaintiff(s) overall health and safety. (See ITEM 27 upon discovery)

86.      On Thursday, 10 MAR 2016, I started monthly Medical Sessions with Dr. David Linden, M. D., with Mind Body

Solutions in Las Vegas, Nevada, (702) 384-2238, due to this very disturbing pattern of abuse, which caused me enormous

amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of

appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on Plaintiff(s) overall health and safety, and was

prescribed medications of Brintellix 10mg. 1 tablet per day, and Hydroxyzine HCL 25 mg. 3 tablets per day, for (Anxiety

Disorder), (Panic Disorder), and (Situational Depression Disorder). (See ITEM 28 upon discovery)

87.      On Friday, 08 APR 2016, at my monthly Medical Session with Dr. David Linden, M. D., with Mind Body Solutions in

Las Vegas, Nevada, (702) 384-2238, my medical dosages increased to Brintellix 20mg. 1 tablet per day, and Hydroxyzine HCL

50 mg. 3 tablets per day.

88.      On Tuesday, 26 APR 2016, I received a Physician Statement from Dr. Craig Weingrow, M. D., in Las Vegas, Nevada,

(877) 391-4372, stating his approval of the use of marijuana as medicine to help reduce my symptoms from PTSD and Panic

Attacks and help in controlling my Anger and Mood Swings. (See ITEM 29 upon discovery)

89.      I received official notification dated Monday, 02 MAY 2016, of my acceptance for the State of Nevada, Department of

Health and Human Services, Medical Marijuana Medicine Registry, for the approval of the use of marijuana as medicine to help

reduce my symptoms from PTSD and Panic Attacks and help in controlling my Anger and Mood Swings. (See ITEM 30 upon discovery)

90.      On Thursday, 12 MAY 2016, I received a Medical Summary from Licensed Professional Clinical Consular, Mike Waller, (702) 930-8562, with Healing Minds Behavioral Health Services in Las Vegas, Nevada, (702) 432-6463, stating that I was being treated on a weekly basis since 27 JAN 2016, for (Adjustment Disorder), (Anxiety Disorder), (Depressed Mood Disorder), and (Post-Traumatic Stress Disorder). (See ITEM 31 upon discovery)

91.      On Thursday, 12 MAY 2016, I received a United States Department of Labor Work Capacity Evaluation Form for Psychiatric/Psychological Conditions completed by Licensed Professional Clinical Consular, Mike Waller, with Healing Minds Behavioral Health Services stating my inability to work due to my Mental Injuries. Defendant(s), Starr Indemnity / Gallagher Bassett Services, still **DENIED URGENT MEDICAL CARE,** *and* **DENIED URGENT WAGE COMPENSATION** to me. (See ITEM 32 upon discovery)

92.      On Friday, 13 MAY 2016, Vice Chairman of the Senate Select Committee on Intelligence, Dianne Feinstein, wrote a letter to the CIA Director John Owen Brennan for an immediate prompt response to provide a new copy of the "Study" (Torture Report) to the CIA OIG, which would ensure that DOJ lawyers could inform federal judges, that the (Status Quo) was "adhered to" and has been "restored" since the Office of the CIA Inspector General had misplaced and/or accidentally destroyed its electronic copy and disk of the Senate Select Committee on Intelligence's full 6,700-page classified Study (Torture Report) of the CIA Detention and Interrogation Program. (See ITEM 33 upon discovery)

93.      On Monday, 16 MAY 2016, I had a Transcript taken of my Deposition in the matter of Plaintiff(s) v. Academi, with regards to my Defense Base Act (DBA) Workman's Compensation Claim. (See ITEM 34 upon discovery)

94.      On Saturday, 16 JUN 2016, I received additional newly prescribed medications from Dr. David Linden, M. D., with Mind Body Solutions in Las Vegas, Nevada, (702) 384-2238, of Seroquel XR 300mg. 1 tablet per day, to help reduce my symptoms from PTSD and Panic Attacks and help in controlling my Anger and Mood Swings.

95.      I have an online Receipt that shows delivery to CIA-OIG of my Third "3rd" Urgent Concern complaints against the Defendant(s), Defense Contractor Academi, for the crimes of (Whistleblower Retaliation and Employer Harassment) and against Defendant(s), the CIA, and the Entire CIA Command of the Secondary AO Theater of Afghanistan, and the Defense Contractor Academi, for the crime of (Torture). It was delivered at 6:46 am on 17 JUN 2016 in WASHINGTON, DC 20505 to CIA 20505 PU and was signed for by S BUKE JR. I did not receive the Green Return Receipt Card back in the mail, which is further "Proof of Evidence" of a cover-up and wrongdoing. (See ITEM 35 upon discovery)

96.      I have an online Receipt that shows delivery to CIA-OIG of my Fourth "4th" Urgent Concern complaints against the Defendant(s), the CIA, and the Entire CIA Command of the Secondary AO Theater of Afghanistan, and Defense Contractor Academi, for the crimes of (Assault with a Deadly Weapon); (Conspiracy to Torture); and (War Crimes). It was delivered at 6:50 am on 27 JUN 2016, in WASHINGTON, DC 20505 to CIA 20505 PU and was signed for by S BURKE JR. I did not receive the

Green Return Receipt Card back in the mail, which is further proof of "Evidence" of a cover-up and wrongdoing. (See ITEM 36 upon discovery)

97.     I received an UNCLASSIFIED letter dated Tuesday, 19 JUL 2016, from the Central Intelligence Agency Office of Inspector General Assistant Inspector General for Investigations Scott D. Williams, stating that my allegation does not qualify for whistleblower protections afforded under Intelligence Community Directive (ICD) 120 and portions of my disclosure are potentially an Office of Equal Employment Opportunity (OEEO) matter, which are not within OIG jurisdiction, which puts me, the "War Victim", in constant "Danger" and in "Fear of My Life", since  I was "Intentionally Denied" to have a Judge or Grand Jury issue Criminal Protection Orders against all subjects to prevent further victimization and to seek Effective Protection from future human rights violations and to obtain justice for past abuses. A denial of this right amounts not only to a denial of the right to a remedy, to investigation, and to reparation; it can also constitute in itself cruel, inhuman, and degrading treatment because it causes new suffering to victims and their relatives. (See ITEM 37 upon discovery)

98.     On Friday, 29 JUL 2016, I wrote, signed, and mailed a "Victim Impact Statement" (VIS) to the Human Rights and Special Prosecutions Section (HRSP), of the Criminal Division to the United States Department of Justice, Keeney Building, Suite 200, 950 Pennsylvania Avenue, N.W. Washington, DC 20530-0001. (See ITEM 38 upon discovery)

99.     On Monday, 01 AUG 2016, I  received a letter of Important Notice from the State of Nevada Department of Motor Vehicles, stating that my Nevada Driving Privileges and Vehicle Registration will be Suspended beginning 06 AUG 2016. This was from my "Deteriorating" Financial Situation due to me being (Tortured) overseas and a result of Defendant(s) Criminal Breach of International Contract, and  illegal denial and cover-up (Federal Insurance Fraud) and (Conspiracy and Attempt to Commit Health Care Fraud) of my Defense Base Act (DBA) Workman's Compensation as a result of Defendant(s) Criminal Breach of DBA Contract. This contributed to make my (Mental Injuries) Suffer and "Worsen" Further. I was able to get it reinstated, but it was eventually Suspended for good a year later around AUG 2017, and has not been reinstated since due to my "Deteriorating" Financial Situation. (See ITEM 39 upon discovery)

100.    On Wednesday, 10 AUG 2016, I had to sell my 2006 Mercedes Benz SLK 55 AMG Convertible to help pay for my living expenses and medical bills. This was from my "Deteriorating" Financial Situation due to me being (Tortured) overseas and a result of Defendant(s) Criminal Breach of International Contract, and  illegal denial and cover-up (Federal Insurance Fraud) and (Conspiracy and Attempt to Commit Health Care Fraud) of my Defense Base Act (DBA) Workman's Compensation as a result of Defendant(s) Criminal Breach of DBA Contract. This contributed to make my (Mental Injuries) Suffer and "Worsen" Further. (See ITEM 40 upon discovery)

101.    On Wednesday, 10 AUG 2016, my 2012 Ducati Diavel Mercedes AMG motorcycle was repossessed due to Defendant(s) Criminal Breach of International Contract, and  illegal denial and cover-up (Federal Insurance Fraud) and (Conspiracy and Attempt to Commit Health Care Fraud) of my Defense Base Act (DBA) Workman's Compensation as a result of Defendant(s) Criminal Breach of DBA Contract. I then received a letter of Notice from Freedom Road Financial, advising me

that they plan to sell my repossessed 2012 Ducati Diavel Mercedes AMG motorcycle at auction because I broke promises in our agreement. This contributed to make my (Mental Injuries) Suffer and "Worsen" Further. (See ITEM 41 upon discovery)

102.      I received a letter dated Friday, 09 SEP 2016, from the United States Department of Justice, and the Office of Human Rights and Special Prosecutions Section to the Criminal Division, Chief Teresa McHenry, stating that my allegations of (Torture) and (War Crimes) *appear* to involve "Personnel Issues" that do not meet the elements needed to establish Torture or War Crimes under Federal Law. which puts me, the "War Victim", in constant "Danger" and in "Fear of My Life", since I was "Intentionally Denied" to have a Judge or Grand Jury issue Criminal Protection Orders against all subjects to prevent further victimization and to seek Effective Protection from future human rights violations and to obtain justice for past abuses. A denial of this right amounts not only to a denial of the right to a remedy, to investigation, and to reparation; it can also constitute in itself cruel, inhuman, and degrading treatment because it causes new suffering to victims and their relatives. (See ITEM 42 upon discovery)

103.      On Friday, 09 SEP 2016, my 2005 Mercedes Benz E55 AMG sedan was repossessed. I then received a letter of Notice from USAA Federal Savings Bank, advising me that they plan to sell my repossessed 2005 Mercedes Benz E55 AMG sedan because I broke promises in our agreement. This was from my "Deteriorating" Financial Situation due to me being (Tortured) overseas and a result of Defendant(s) Criminal Breach of International Contract, and illegal denial and cover-up (Federal Insurance Fraud) and (Conspiracy and Attempt to Commit Health Care Fraud) of my Defense Base Act (DBA) Workman's Compensation as a result of Defendant(s) Criminal Breach of DBA Contract. This contributed to make my (Mental Injuries) Suffer and "Worsen" Further. (See ITEM 43 upon discovery)

104.      On Saturday, 05 NOV 2016, the weekend before the new 2016 Presidential Election, Plaintiff(s) received an email from Defendant(s), Larry Heppner, "Bull", the site manager for my employer Academi, and, "Detroit", a CIA employee that was also deployed there at the CIA Base in Kabul, Afghanistan, who were still in Afghanistan stating that they are "all curious to how I'm doing", over one year after their ***"Retaliatory Isolation Techniques"*** and ***"Systematic Diminishment Techniques"*** **(Torture Techniques)** were used on and against me. "Bull" told me on 02 OCT 2015, while I was in the process of returning home CONUS, that I better get a "Good" attorney, which I took "Offense" to. In addition, "Detroit" told me not to go to "D.C." with my complaints because she will take care of it for me, which I did not believe. (See ITEM 44 upon discovery)

105.      On Thursday, 08 DEC 2016, I had to stop bi-monthly Clinical Sessions with Licensed Professional Clinical Consular, Mike Waller, (702) 930-8562, with Healing Minds Behavioral Health Services in Las Vegas, Nevada, (702) 432-6463, due to my degrading financial situation, causing me "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

106.      In DEC 2016, I had to stop monthly Medical Sessions and Prescribed Medications with Dr. David Linden, M.D., with Mind Body Solutions in Las Vegas, Nevada, (702) 384-2238, due to my degrading financial situation, causing me "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

107.     In DEC 2016, I had a "Wormhole" and became "Entangled" with the Orion Nebula (Sword of the Giant) receiving "Intelligence Information". This is known as the "Einstein-Rosen Bridge" and the "Einstein-Podolsky-Rosen Paradox" (ER = EPR) relation to the "Wormhole" and "Quantum Entanglement" Correlation. The Great Nebula in the constellation Orion's (Sword of the Giant) is a "Star-Birth Region" located in the same "Spiral Arm" of our Milky Way galaxy as our Sun. (See ITEM 45 upon discovery)

108.     On Thursday, 05 JAN 2017, I sold my Glock 17 pistol to New Frontier Armory in North Las Vegas, Nevada, for $250, because I did not want to be responsible for using it or it being used against me, especially since I am currently trying to arrest top United States Government officials. In addition, I needed the money and I also no longer felt safe with my neighbors in my community or with my Local Law Enforcement and Intelligence Authorities for the *fact* that the "Intelligence Agency" is trying to make me kill myself so that I will no longer have a "Criminal" Case against them.

109.     On the very next day of Friday, 06 JAN 2017, the mass shooting at the Fort Lauderdale-Hollywood International Airport in Florida occurred. This event scared me because of my current Mental Injuries, the seriousness of my current situation, and how similar the shooter's interactions with the CIA and the FBI were to mine, which I then decided that I needed to get rid of the rest of my guns (.223 cal SBR 7" pistol and .308 cal AR10 20" rifle), both with 50 round drums, as soon as possible.

110.     On Saturday, 25 FEB 2017, I sold my last gun, .308 cal AR10 20" rifle, which cost me a total of $4,000, to New Frontier Armory in North Las Vegas, Nevada, for $800, to pay for future bills, but also because I did not want it to be used against me in any manner, especially since I'm currently trying to arrest top Government officials and I no longer felt safe with my neighbors in my community or with my Local Law Enforcement and Intelligence Authorities for the *fact* that the "Intelligence Agency" is trying to make me kill myself so that I will no longer have a "Criminal" Case against them. After getting rid of my last gun and leaving the gun store, I continued on driving to do a few errands, like go to the grocery store. On my drive home from the grocery store, I was cut off erratically by a white car just before turning into the left turning lane to enter my neighborhood, that then drove right to my house and as I'm driving entering my driveway, this white car then stops in front of my house and the driver's side door opens and as the driver steeps out I continue to enter my garage and then close my garage door. I take these Acts as (Assault) being "Offensive" and "Attempting" to initiate bodily harm. I then witness a black male and a white van with "We Install Carpets" written in big black letters on the side, both passing in front of my house a few times then returning to a neighbor's house at 5924 Big Horn View Street. Upon watching them from a window in my garage, these neighbors then say, "look, he's looking! He's scared! He's scared! Get him!" At which time I then witness one black male run from the house at 5924 Big Horn View Street to another neighbor's house at 5912 Big Horn View Street, which is just across the street from me. Within 20 minutes I then hear my side neighbor at 5913 Big Horn View Street, start up his Harley Davidson motorcycle and rev it very loud for a while. This all caught my attention very fast making me feel "Targeted" and "Fearful" of what might happen next. I then texted and then called Rob Sullivan, a Detective for North Las Vegas Police Department, who had been over to my house with Kris A. Miyasato, a Task Force Officer with the United States Federal Bureau of Investigations

(FBI), asking him to come to my house for support. He later called me back and told me that he called his dispatch and reported the incident to them for me.

111.    On Saturday, 25 FEB 2017, just hours after I turned in his last rifle, which only Rob and Kris were aware of, in addition to them also knowing that I was very scared of my situation, I was "Assaulted" by three "3" neighbors upon returning home, using (Illegal Surveillance Techniques), leaking Plaintiff(s) Cell Phone Text Messages (in reference to cell phone text messages with me and Rob). This is a very disturbing (Pattern of Abuse), which caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety.

112.    I have Fourteen "14" pages of Text Messages I had with Rob Sullivan, (702)-354-4244, Detective with North Las Vegas Police Department, that shows he was aware of my situation, my Mental State, and the fact that I was trying to get rid of all of my guns (2 rifles and 2 pistols with over a thousand rounds of ammunition). These text messages were used against me by my Local Law Enforcement Authorities or the Intelligence Agency, because no other person was aware of my decision to get rid of my last gun or when I was going to do so except for Rob Sullivan. And the fact that three "3" of my neighbors had planned an "Assault Attack" on me just hours after I turned in my last gun is proof that my text messages were released to them somehow by the use of **(Illegal Surveillance Techniques)** and **(Spying for the Enemy State)**. (See ITEM 46 upon discovery)

113.    I received a letter of Notice dated Monday, 13 MAR 2017, from the United States Department of Justice Office of Special Litigation Section to the Civil Rights Division Acting Assistant Attorney General Thomas E. Wheeler II, stating that my (War Crimes) and (Obstruction of Justice) case is not the type of case that office prosecutes, which puts me, the "War Victim", in constant "Danger" and in "Fear of My Life" since I was "Intentionally Denied" to have a Judge or Grand Jury issue Criminal Protection Orders against all subjects to prevent further victimization and to seek Effective Protection from future human rights violations and to obtain justice for past abuses. A denial of this right amounts not only to a denial of the right to a remedy, to investigation, and to reparation; it can also constitute in itself cruel, inhuman, and degrading treatment because it causes new suffering to victims and their relatives. (See ITEM 47 upon discovery)

114.    I received a letter dated Wednesday, 12 APR 2017, from the Congress of the United States of America, and the State of Nevada Senate Regional Representative Bradley Sensibaugh, and the State of Nevada Senator Dean Arthur Heller, stating that there are no further avenues for me at this time. Included is the response the United States Department of Justice Office of Special Litigation Section to the Civil Rights Division Acting Assistant Attorney General Thomas E. Wheeler II, state that they do not have jurisdiction over the activities of the of the CIA or associated defense contractors, which puts me, the "War Victim", in constant "Danger" and in "Fear of My Life", since Plaintiff(s) was "Intentionally Denied" to have a Judge or Grand Jury issue Criminal Protection Orders against all subjects to prevent further victimization and to seek Effective Protection from future human rights violations and to obtain justice for past abuses. A denial of this right amounts not only to a denial of the right to a remedy, to investigation, and to reparation; it can also constitute in itself cruel, inhuman, and degrading treatment because it

causes new suffering to victims and their relatives. (See ITEM 48 upon discovery)

115.    On Thursday, 20 APR 2017, I received a Physician Statement from Dr. Craig Weingrow, M. D., in Las Vegas, Nevada, (877) 391-4372, reinstating for a second year of his approval of the use of marijuana as medicine to help reduce my symptoms from PTSD and Panic Attacks and help in controlling my Anger and Mood Swings. I was last seen in 2017, due to my degrading financial situation, causing me "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 49 upon discovery)

116.    I received official notification dated Thursday, 27 APR 2017, of my acceptance from the State of Nevada, Department of Health and Human Services, Medical Marijuana Medicine Registry for the second year of the approval of the use of marijuana as medicine to help reduce my symptoms from PTSD and Panic Attacks and help in controlling my Anger and Mood Swings. My Medical Marijuana prescription stopped in 2017 due to my degrading financial situation, causing me "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 50 upon discovery)

117.    On Friday, 05 MAY 2017, I received a Jury Summons from the Eighth Judicial District Court of the State of Nevada in and for the County of Clark, to report in the Eighth Judicial District Court of the State of Nevada in and for the County of Clark on Wednesday, 17 MAY 2017. I called my Clinical Consular, Mike Waller, with Healing Minds Behavioral Health Services, "Crying" because I felt "Threatened", "Targeted", "Tortured", "Assaulted", "Attacked", "Isolated", "Oppressed", "Dominated", "Defeated", "Diminished", "Harmed", and "Betrayed". (See ITEM 51 upon discovery)

118.    On Monday, 08 MAY 2017, I wrote, signed, and mailed a letter to His Holiness, Pope Francis, at the Vatican City, which I also mailed to the United Nations Complaint Procedure Unit, the United States Congress, and the United States Department of Justice. As a Roman Catholic male who was fighting in a Warzone in the Name of My [GOD], [Jesus Christ], and being His Holiness' most obedient and humble servant, I then Must Profess Myself with the most Profound Respect and Honor, to ask His Holiness to please Pray for me and to please Forgive Defendant(s) for serving the Enemy State. (See ITEM 52 upon discovery)

119.    In Mid MAY 2017, the Turley Law Firm, and the Mouledoux, Bland, Legrand, and Brackett LLC Law Firm, and the Defense Attorney Robert N. Popich for the Starr Indemnity and Liability Company, c/o Gallagher Bassett Services, asked me to do an Independent Medical Examination for my (DBA) Workman's Compensation Case. I advised both parties that I needed an additional two "2" weeks or a month to "Calm Down" since they waited In-Bad-Faith to do their Independent Medical Examination one "1" (whole) year after my Deposition in this case, causing me "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

120.    In the beginning of JUN 2017, I did an "Independent Medical Examination" for my (DBA) Workman's Compensation Case, "One-Year" after I had a Transcript taken of my Deposition in the matter of Plaintiff(s) v. "Academi" – Constellis Group, Inc. / Triple Canopy, and Teresa Martin, Senior Resolution Manager with Starr Indemnity / Gallagher Bassett Services. I then ask

the Turley Law Firm, for that Doctor's Report from his "Independent Medical Examination" of me and also requested a Hearing date and they told me that they would be in touch. After that, another two "2" months passed by with no call back. All the front office for the Turley Law Firm told me was that they are too busy to speak with me. I never received the "Independent Medical Examination". In addition, I never received a Hearing Date after waiting nearly two "2" years In-Good-Faith after filing my DBA claim for "Urgent Medical Care and Urgent Wage Compensation", causing me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

121.    I received Copy of a Judgment by Default dated Tuesday, 06 JUN 2017, against me by Discover Bank in the Eighth Judicial District Court for Clark County, Nevada, in the amount of $21,146.27 for "Enrichment". This caused me even more amount of fear, panic, terror, distress, anger, rage. depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, causing me "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH)

122.    On 19 JUN 2017, I had to sell my final vehicle, my 2005 Mercedes Benz SL 55 AMG Roadster to help pay for my living expenses and medical bills due to my "Deteriorating" Financial Situation due to me being (Tortured) overseas and a result of Defendant(s) Criminal Breach of International Contract, and  illegal denial and cover-up (Federal Insurance Fraud) and (Conspiracy and Attempt to Commit Health Care Fraud) of my Defense Base Act (DBA) Workman's Compensation as a result of Defendant(s) Criminal Breach of DBA Contract. This contributed to make my (Mental Injuries) Suffer and "Worsen" Further. This then left me with no vehicle and walking on foot where I no longer felt safe with my neighbors in my community or with my Local Law Enforcement Authorities for the *fact* that the "Intelligence Agency" was trying to make me kill myself so that I will no longer have a "Criminal" Case against them, which caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, causing me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 53 upon discovery)

123.    I received a second "2nd" letter of Notice dated Tuesday, 11 JUL 2017, from the United States Department of Justice Office of Special Litigation Section to the Civil Rights Division, stating that my War Crimes and Obstruction of Justice case is not the type of case that office prosecutes, which puts Plaintiff(s), the "War Victim", in constant "Danger" and in "Fear of My Life", since I was "Intentionally Denied" to have a Judge or Grand Jury issue Criminal Protection Orders against all subjects to prevent further victimization and to seek Effective Protection from future human rights violations and to obtain justice for past abuses. A denial of this right amounts not only to a denial of the right to a remedy, to investigation, and to reparation; it can also constitute in itself cruel, inhuman, and degrading treatment because it causes new suffering to victims and their relatives. (See ITEM 54 upon discovery)

124.    I received a letter dated Friday, 28 JUL 2017, from Bank of America advising me of the State of California Franchise Tax Board, Order to Withhold in the amount of $4,161.44 for the tax year of 2012, which required them by California Law to debit and/or restrict access to my bank account. I was deployed to Iraq in the year of 2012 and was registered as a Foreign Resident by the Kurdistan Regional Government of Sulaymaniyah, Iraq. During the year of 2012, I was in CONUS from 01 Jan 2012 – 26 JAN 2012, 17 MAY 2012 – 31 MAY 2012, 16 JUL 2012 – 09 AUG 2012, and 29 OCT – 31 DEC 2012, and at no time was I living or doing business in the State of California. This Tax Fraud and Bank Fraud caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 55 upon discovery)

125.    In the middle of AUG 2017, I wrote the Turley Law Firm in an email advising them that they are "Fired" and no longer "Representing" me in my Defense Base Act (DBA) Workman's Compensation Case because I was pressing Federal "Criminal" Charges" of 18 U.S.C. § 1031 (Federal Insurance Fraud); 18 U.S.C. § 201 (Corruption); 18 U.S.C. § 371 (Conspiracy); 18 U.S. Code § 241 (Conspiracy against rights); and (Enrichment with Intention of Personal Gratification) due to not being allowed to file for a "Hearing Date", which caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

126.    On Monday, 21 AUG 2017 the "Total Solar Eclipse" occurred across the entire United States landscape. (See ITEM 56 upon discovery)

127.    At 10 PM CDT on Friday, 25 AUG 2017, Hurricane Harvey confirmed landfall at 28.0 N 97.0 W, in Texas, and "Held" over the Houston Metropolitan Area for over 4 days "96 hours" making Hurricane Harvey the "Wettest Atlantic Hurricane Ever Measured", causing "Catastrophic Rainfall-Triggered Flooding" and "Over One-Hundred Deaths". (See ITEM 57 upon discovery)

128.    I received a letter dated Thursday, 31 AUG 2017, from the United States Department of Labor Office of Worker's Compensation Programs Division of Longshore and Harbor Workers' Compensation 13th Compensation District Director R. Todd Bruininks, referring my Defense Base Act (DBA) Workman's Compensation Claim for a formal hearing. The "ONLY" reason my DBA case was referred for a formal hearing was because I had to "Fire" and Press "Criminal" Charges of 18 U.S.C. § 1031 (Federal Insurance Fraud); 18 U.S.C. § 201 (Corruption); 18 U.S.C. § 371 (Conspiracy); and 18 U.S. Code § 241 (Conspiracy against rights); with intention to increase profits through **"Enrichment"** In-Bad-Faith (Evil Minded), against the Turley Law Firm, after waiting nearly two "2" years In-Good-Faith of being **DENIED A HEARING, DENIED URGENT MEDICAL CARE and DENIED URGENT WAGE COMPENSATION,** after starting this Federal Insurance Fraud (SCAM). (See ITEM 58 upon discovery)

129.    On Thursday, 31 AUG 2017, the Turley and Mara Law Firm filed a Motion to Withdraw as Counsel stating irreconcilable differences, "ONLY" because I Am Pressing Federal "Criminal Charges" against him "Personally".

130.    On Saturday, 23 SEP 2017, **A Great Wondrous Sign Appeared In Heaven: A Woman [Virgo] the Virgin was**

clothed with the sun, with the moon under Her feet, and a Crown of Twelve-Stars on Her head [Leo]. She was pregnant and cried out in pain as She was about to give birth. She gave birth to a [Son], a Male Child, to "Rule" All the Nations with an Iron Scepter and Her Child was snatched up to [GOD], and to [HIS THRONE OF GLORY] for Evermore. (See ITEM 59 upon discovery)

131.      I received a letter of Intent dated Monday, 25 SEP 2017, to Record a Notice of State Tax Lien in the amount of $2,564.32 from the State of California Office of the Franchise Tax Board, for the Tax Year of 2012, causing me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 60 upon discovery)

132.      I received a letter of Notice of Docketing my DBA Case for Formal Hearing dated Wednesday, 11 OCT 2017, from the United States Department of Labor Office of Administrative Law Judges, in San Francisco, California. (See ITEM 61 upon discovery)

133.      I received a letter dated Monday, 16 OCT 2017, from the United States Department of Labor Office of Administrative Law Judges, Administrative Law Judge Jennifer Gee, in San Francisco, California, of an Order Granting Motion for Leave to Withdraw as Counsel of the Turley and Mara Law Firm, in Plaintiff(s) Defense Base Act (DBA) Workman's Compensation Case. (See ITEM 62 upon discovery)

134.      I received a letter dated Monday, 13 NOV 2017, from the United States Department of Labor Office of Administrative Law Judges, Administrative Law Judge Jennifer Gee, in San Francisco, California, of an Order to Show Cause Re: Remand from Administrative Law Judge Jennifer Gee. (See ITEM 63 upon discovery)

135.      I received a letter of Notice dated Tuesday, 21 NOV 2017, from the Mail Referral Unit of the United States Department of Justice, assigning me an ID number 3936092 with regards to my Criminal and Civil complaints. (See ITEM 64 upon discovery)

136.      On Wednesday, 29 NOV 2017, my bank statement from Bank of America showed my Checking Account was "FORCE CLOSED" In-Bad-Faith (Evil Minded), by the State of California, causing me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 65 upon discovery)

137.      I have  a copy of my Sulaymaniyah, Iraq Foreign Residency Card issued on 15 FEB 2012 by the Kurdistan Regional Government, with expiration date of 14 FEB 2013. During the year of 2012, I was in the United States from 01 Jan 2012 – 26 JAN 2012, 17 MAY 2012 – 31 MAY 2012, 16 JUL 2012 – 09 AUG 2012, and 29 OCT – 31 DEC 2012. At no point

was I living in the United States nor the State of California or doing business in the State of California. (See ITEM 66 upon discovery)

138.    I received a letter of Order to Clarify Position on Remand dated Tuesday, 05 DEC 2017, from the United States Department of Labor Office of Administrative Law Judges, Administrative Law Judge Jennifer Gee, in San Francisco, California. (See ITEM 67 upon discovery)

139.    I received a letter of Notice dated Monday, 25 DEC 2017, from the United States Department of the Treasury Office of the United States Department of the Treasury Internal Revenue Service, advising me that I still owe Federal Taxes in the amount of $1,797.91, for the year of 2015, while (GETTING TORTURED) in Afghanistan, causing me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 68 upon discovery)

140.    I received a letter of Notice dated Monday, 25 DEC 2017, from the United States Department of the Treasury Office of the United States Department of the Treasury Internal Revenue Service, advising me that I still owe Federal Taxes in the amount of $20,652.59, for the year of 2015, while (GETTING TORTURED) in Afghanistan, causing me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 69 upon discovery)

141.    I received a letter of Notice of Default dated Tuesday, 30 JAN 2018, from Nationstar Mortgage, on my real estate property at 5917 Big Horn View Street, North Las Vegas, Nevada 89031. This caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 70 upon discovery)

142.    On Friday, 02 FEB 2018, I vacated and foreclosed on my real estate property at 5917 Big Horn View Street, North Las Vegas, Nevada 89031. This caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

143.    On Friday, 02 FEB 2018, I moved to 9311 Airport Boulevard, Mobile, AL 36608-9513, to live with a family member until Wednesday, 01 AUG 2018. This caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social

and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

144.     In FEB 2018, the National Broadcasting Company NBC Headquarters, and NBC Universal Media, LLC, hired the former United States Central Intelligence Agency Director John Owen Brennan, as their "Senior National Security and Intelligence Analyst" using **(Interstate and International Wire, Radio, and Television Communications)** in a **"Scheme to Defraud"** with **(Intent to Impede, Obstruct, or Influence to achieve political, financial, or legal purposes),** that resulted in damages to me, Plaintiff(s), and caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

145.     I received a letter dated Wednesday, 28 FEB 2018, from the United States Department of Labor Office of Administrative Law Judges, Administrative Law Judge Jennifer Gee, in San Francisco, California, of an Order Remanding my Defense Base Act (DBA) Workman's Compensation Case back to the Office of the Workman's Compensation Programs (OWCP), *"after"* over two "2" years of being **DENIED A HEARING, DENIED URGENT MEDICAL CARE, and DENIED URGENT WAGE COMPENSATION** of my "Permanent Personal Injury" in Afghanistan. (See ITEM 71 upon discovery)

146.     At 4 AM CDT on Saturday, 26 MAY 2018, Subtropical Storm Alberto, the first Subtropical Storm of 2018, was confirmed at location at 19.9 N 85.6 W in the Caribbean Sea with a track to Mobile, Alabama. (See ITEM 72 upon discovery)

147.     On Wednesday, 01 AUG 2018, I moved to 1528 Shady Lane, Erath, Louisiana 70533, to live with a family member until 26 JAN 2019. This caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

148.     On 17 JUN 2018, I mailed an "Obstruction of Justice" complaint to the United States Department of Justice, returned receipt certified mail United States Postal Service tracking number 70151660000051878577 – is no-longer tractable, and was never delivered, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). (See ITEM 73 upon

discovery)

149.       I received a letter dated Monday, 06 AUG 2018, from Affinia Default Services, LLC, advising me that there has been a (Trustee Sale) that occurred on 03 AUG 2018 at 12:00 AM, for my Real Estate Property located at "5917 Big Horn View Street, North Las Vegas, Nevada 89031". This caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 74 upon discovery)

150.       I received a letter dated Thursday, 11 OCT 2018, from the United Nations Headquarters, Complaint Procedure Unit, Human Rights Council Branch Office of the United Nations High Commissioner for Human Rights, United Nations Office at Geneva, stating in writing that my International "Criminal and Civil" complaints of **(Crimes of Aggression), (War Crimes), (Crimes Against Humanity),** and **(Crimes of Genocide)** in Afghanistan are: "not consistent patterns of gross and reliably attested violations of all human rights and all fundamental freedoms", which puts me, the "War Victim", in constant "Danger" and in "Fear of My Life", since I was "Intentionally Denied" to have a Judge or Grand Jury issue Criminal Protection Orders against all subjects to prevent further victimization and to seek Effective Protection from future human rights violations and to obtain justice for past abuses. A denial of this right amounts not only to a denial of the right to a remedy, to investigation, and to reparation; it can also constitute in itself cruel, inhuman, and degrading treatment because it causes new suffering to victims and their relatives. (See ITEM 75 upon discovery)

151.       On Wednesday, 31 OCT 2018, I received a letter from the United States White House and President Trump and First Lady Melania Trump, to "find comfort and strength in my faith" during these difficult times I am experiencing. (See ITEM 76 upon discovery)

152.       On 03 DEC 2018, I mailed a certified 10 lb. box including intelligence documents and my complaint demanding a Military Commission for a United States Military Tribunal for (WAR TREASON) mailed to the United States Department of Defense, United States Postal Service tracking number 70170660000094027643 – is no-longer tractable, and was never delivered, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). (See ITEM 77 upon discovery)

153.       On Saturday, 26 JAN 2019, I moved to 4711 Renie Road, Erath, Louisiana 70533, to live with a family member. This

caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

154.     Around the 4th of July, 2019, the Long, Strange Trip to Becoming Hurricane Barry and the possible track of future Barry, as clusters of thunderstorms in the Plains formed their own area of low pressure a few thousand feet above the ground, what meteorologists call a mesoscale convective vortex. While the disturbance was still located over Tennessee on 06 JUL 2019, the National Hurricane Center flagged it for potential tropical development – a rarity for a system still well inland. (See ITEM 78 upon discovery)

155.     At 10 AM CDT on Saturday, 13 JUL 2019, Hurricane Barry, the 1st Hurricane of the 2019 season, confirmed landfall at 29.6N 92.0W, about 40 miles south of Lafayette, Louisiana, right to my location in Erath, Louisiana. (See ITEM 79 upon discovery)

156.     On 24 JUL 2019, the United States White House, and the President Donald John Trump, tweeted: "TRUTH IS A FORCE OF NATURE!" (See ITEM 80 upon discovery)

157.     On Wednesday, 30 OCT 2019, my former Defense Base Act attorney Mr. William David Turley, pleaded guilty in federal court for Enticement and Coercion to Engage in Prostitution Case No. 18-CR-4574-AJB San Diego, California.

158.     On 30 APR 2020, I mailed my complaint to NATO Headquarters Brussels, Belgium, United States Postal Service international tracking number LH097119748US –Returned To Sender on 27 JUL 2020 by United States Customs and Border Protection, and was never delivered, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)).

159.     On 28 JUL 2020, I mail my complaint to the United Nations Headquarters New York return receipt certified mail United States Postal Service tracking number 70191640000077967424 –Delivery Attempt 30 JUL 2020 at 9:42 am Delivery Attempted – No Access to Delivery Location 10017 (United Nations Headquarters New York), which – is no-longer tractable, and was never delivered, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the

justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). (See ITEM 81 upon discovery)

160.     I received a **"FRAUDULENT"** Account Status Notice (1203506341) dated 14 AUG 2020 for the tax year 2012 from the State of California Office of the Franchise Tax Board, for "additional liabilities". This caused me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 82 upon discovery)

161.     On 08 SEP 2020, I mailed my complaint to the United States White House return receipt certified mail United States Postal Service tracking number 70200090000060230467, and to the United States Department of Justice return receipt certified mail United States Postal Service tracking number 70200090000060230474, and to the United States Department of Defense return receipt certified mail United States Postal Service tracking number 70200090000060230481, and to the United States Supreme Court return receipt certified mail United States Postal Service tracking number 70200090000060230498, all –In-Transit 12 SEP 2020 In Transit, Arriving Late, all are no-longer tractable, and all were never delivered, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH) from "Further and Additional" (Subjugation), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). (See ITEM 83 upon discovery)

162.     Tropical Storm Cristobal, Tropical Storm Marco, Hurricane Laura, Hurricane Delta, and Hurricane Zeta all struck and made landfall in Louisiana in 2020. (See ITEM 84 upon discovery)

163.     On 20 OCT 2020, I mailed my complaint to the United States Central Intelligence Agency return receipt certified mail United States Postal Service tracking number 70200090000060245874 –Refused on 27 OCT 2020 at 07:38 am, and was returned to sender, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of

military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). (See ITEM 85 upon discovery)

164.     On 01 DEC 2020, I mailed my complaint to the United States Central Intelligence Agency return receipt certified mail United States Postal Service tracking number 70200090000060237992 –Refused on 10 DEC 2020 and was returned to sender, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). (See ITEM 86 upon discovery)

165.     On 29 DEC 2020, I mailed my complaint to the United States Central Intelligence Agency return receipt certified mail United States Postal Service tracking number 70200090000060263052 –Refused on 04 JAN 2021 and was returned to sender, causing me, Plaintiff(s), "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and (FEAR OF EARLY DEATH), which are directly connected with previous acts of (War Crimes) and (Subjugation) and in "Furtherance of the Conspiracy" that caused a "Permanent Personal Injury" in Afghanistan of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another, me, (Plaintiff(s)). (See ITEM 87 upon discovery)

166.     I received an Annual Notice Of Tax Delinquency for the Tax Period of 2015 dated 05 JAN 2021 from the United States Internal Revenue Service, and contractor Continental Service Group, Inc, advising me that I still owe Federal Taxes in the amount of $2,077.65 for the year of 2015, while (GETTING TORTURED) in Afghanistan, causing me even more amount of fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 88 upon discovery)

167.     I received an Annual Notice Of Tax Delinquency for the Tax Period of 2015 dated 05 JAN 2021 from the United States Internal Revenue Service, and contractor Continental Service Group, Inc, advising me that I still owe Federal Taxes in the amount of $25,004.24 for the year of 2015, while (GETTING TORTURED) in Afghanistan, causing me even more amount of

fear, panic, terror, distress, anger, rage, depression, social and emotional anxiety, pain, suffering, loss of sleep, loss of appetite, vomiting, high blood pressure, hair loss, acne, panic attacks, and toll on my overall health and safety, and caused me, "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH). (See ITEM 89 upon discovery)

168.     DEMAND for payment has been made, which DEMAND has been refused or ignored and which International and Domestic Obligations remains unpaid and is now due and owing.

## CAUSES OF ACTION

### COUNT I: FIRST CLAIM FOR RELIEF

> **TORTURE; CONSPIRACY TO COMMIT TORTURE; WAR CRIMES; CONSPIRACY TO COMMIT WAR CRIMES; CONSPIRACIES BY UNITED STATES OFFICIALS TO KILL, KIDNAP, MAIM, OR INJURE PERSONS OR DAMAGE PROPERTY IN A FOREIGN COUNTRY; CONSPIRACY TO COMMIT ASSAULT WITH DEADLY WEAPONS; CONSPIRACY AND ATTEMPT TO COMMIT ASSAULT WITH WEAPONS OF MASS DESTRUCTION; AIDING THE ENEMY; WRONGFULLY AIDING THE ENEMY; EXECUTIVE CORRUPTION; SPIES; UNPRIVILEGED BELLIGERENTS – LIABILITY FOR PARTICIPATION IN HOSTILITIES; AND CRIMINAL BREACH OF INTERNATIONAL CONTRACT OF AGREEMENT THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

169.     Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 168 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

170.     Plaintiff(s) have fully complied with the terms of the (International Contract of Agreement) in reference to the contracted and subcontracted "Private Security Services" provided in Afghanistan.

171.     Defendant(s), (1) – (8), (10) – (17), and (26), have failed to comply with the terms of the (International Contract of Agreement) showing misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (8), (10) – (17), and (26), defaulted by conducting the above criminal acts against Plaintiff(s) that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)). The date of default was on or about 03 MAY 2014.

172.     As a result of Defendant(s), (1) – (8), (10) – (17), and (26), criminal breach of (International Contract of Agreement), and default by showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT II: SECOND CLAIM FOR RELIEF

**TAMPERING WITH FEDERAL WITNESSES; RETALIATING AGAINST FEDERAL WITNESSES; RETALIATING AGAINST A WITNESS, VICTIM, OR AN INFORMANT; OBSTRUCTION OF PENDING FEDERAL COURT PROCEEDINGS; OBSTRUCTION OF PENDING CONGRESSIONAL OR FEDERAL ADMINISTRATIVE PROCEEDINGS; KNOWINGLY OBSTRUCTING JUSTICE; OBSTRUCTION OF CRIMINAL INVESTIGATIONS; GOVERNMENT OFFICIALS WHO AUTHORIZED OR CONSPIRED TO STALK INDIVIDUALS WITH THE INTENT TO HARASS, INJURE, OR INTIMIDATE ANOTHER; CIVIL ACTION TO RESTRAIN HARASSMENT OF A VICTIM OR WITNESS; CONSPIRACY TO COMMIT ASSAULT WITH DEADLY WEAPONS; ILLEGAL SURVEILLANCE TECHNIQUES; SPYING FOR THE ENEMY; AIDING THE ENEMY; WRONGFULLY AIDING THE ENEMY; EXECUTIVE CORRUPTION; REBELLION AND INSURRECTION; SEDITIOUS CONSPIRACY; ADVOCATING OVERTHROW OF GOVERNMENT; CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS; CONSPIRACY AGAINST RIGHTS; ACTION FOR NEGLECT TO PREVENT CONSPIRACY TO COMMIT TORTURE; AND ACTION FOR NEGLECT TO PREVENT CONSPIRACY TO COMMIT WAR CRIMES THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

173.   Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 172 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

174.   Defendant(s), (1) – (8), (9), (10) – (17), and (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (8), (9), (10) – (17), and (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

175.   As a result of Defendant(s), (1) – (8), (9), (10) – (17), and (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT III: THIRD CLAIM FOR RELIEF

**TREASON; CONSPIRACY TO COMMIT TREASON; INCITEMENT IN COMMITTING TREASON; COMPLICITY IN COMMITTING TREASON; SOLICITING OTHERS TO COMMIT A CRIME OF VIOLENCE; CONSPIRING TO SOLICIT, AND AIDING AND ABETTING SUCH SOLICITATION; COMMAND RESPONSIBILITY AS A MODE OF LIBILITY FOR AN OFFENSE; AIDING AND ABETTING AS A PRINCIPLE OF STATE RESPONSIBILITY; ESPIONAGE, SABOTAGE, AND OTHER HOSTILE ACTS; AND ACTION FOR NEGLECT TO PREVENT CONSPIRACY TO COMMIT TREASON THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

176.   Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1

through 175 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

177.    Defendant(s), (1) – (8), (9), (10) – (17), and (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (8), (9), (10) – (17), and (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

178.    As a result of Defendant(s), (1) – (8), (9), (10) – (17), and (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT IV: FOURTH CLAIM FOR RELIEF

**WAGING A WAR OF AGGRESSION; CONSPIRACY TO WAGE A WAR OF AGGRESSION; CRIMES AGAINST HUMANITY; CONSPIRACY TO COMMIT CRIMES AGAINST HUMANITY; AND ACTION FOR NEGLECT TO PREVENT WAGING A WAR OF AGGRESSION AND CRIMES AGAINST HUMANITY THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

179.    Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 178 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

180.    Defendant(s), (1) – (8), (9), (10) – (17), and (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (8), (9), (10) – (17), and (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

181.    As a result of Defendant(s), (1) – (8), (9), (10) – (17), and (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT V: FIFTH CLAIM FOR RELIEF

**PERSECUTION; CONSPIRACY TO COMMIT PERSECUTION; SLAVERY; CONSPIRACY TO COMMIT SLAVERY; INTICEMENT INTO SLAVERY; PEONAGE, SLAVERY, AND TRAFFICKING IN PERSONS; BENEFITTING FINANCIALLY FROM PEONAGE, SLAVERY, AND TRAFFICKING IN PERSONS; AND ACTION FOR NEGLECT TO PREVENT CONSPIRACY TO COMMIT PERSECUTION AND SLAVERY THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

182.    Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 181 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

183.    Defendant(s), (1) – (8), (9), (10) – (17), and (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (8), (9), (10) – (17), and (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

184.    As a result of Defendant(s), (1) – (8), (9), (10) – (17), and (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT VI: SIXTH CLAIM FOR RELIEF

**FEDERAL DEFENSE BASE ACT INSURANCE FRAUD; CONSPIRACY TO COMMIT FEDERAL DEFENSE BASE ACT INSURANCE FRAUD; HEALTH CARE FRAUD; ATTEMPT AND CONSPIRACY TO COMMIT HEALTH CARE FRAUD; CRIMES BY OR AFFECTING PERSONS ENGAGED IN THE BUSINESS OF INSURANCE WHOSE ACTIVITIES AFFECT INTERSTATE COMMERCE; CIVIL PENALTIES AND INJUNCTIONS FOR VIOLATIONS OF SECTION 1033; FALSE STATEMENTS RELATING TO HEALTH CARE MATTERS; INJUNCTIONS AGAINST FRAUD; ENRICHMENT IN THE POWER OF THE PURSE WITH INTENTION OF PERSONAL GRATIFICATION; RETALIATING AGAINST A WITNESS, VICTIM, OR AN INFORMANT; CIVIL ACTION TO RESTRAIN HARASSMENT OF A VICTIM OR WITNESS; CIVIL ACTION TO PROTECT AGAINST RETALIATION IN FRAUD CASES; CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS; CONSPIRACY AGAINST RIGHTS; AND CRIMINAL BREACH OF DEFENSE BASE ACT CONTRACT THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

185.    Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 184 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

186.    Defendant(s), (1), (5), (10), (13), (18), (19), (20), (21), and (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United

States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1), (5), (10), (13), (18), (19), (20), (21), and (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

187.    As a result of Defendant(s), (1), (5), (10), (13), (18), (19), (20), (21), and (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

## COUNT VII: SEVENTH CLAIM FOR RELIEF

**INTERSTATE TAX FRAUD; CONSPIRACY TO COMMIT INTERSTATE TAX FRAUD; INTERSTATE BANK FRAUD; CONSPIRACY TO COMMIT INTERSTATE BANK FRAUD; INJUNCTIONS AGAINST FRAUD; ENRICHMENT IN THE POWER OF THE PURSE WITH INTENTION OF PERSONAL GRATIFICATION; TAMPERING WITH FEDERAL WITNESSES; RETALIATING AGAINST FEDERAL WITNESSES; RETALIATING AGAINST A WITNESS, VICTIM, OR AN INFORMANT; CIVIL ACTION TO RESTRAIN HARASSMENT OF A VICTIM OR WITNESS; CIVIL ACTION TO PROTECT AGAINST RETALIATION IN FRAUD CASES; CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS; AND CONSPIRACY AGAINST RIGHTS THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

188.    Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 187 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

189.    Defendant(s), (22), (24), (25), and (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (22), (24), (25), and (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

190.    As a result of Defendant(s), (22), (24), (25), and (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT VIII: EIGHTH CLAIM FOR RELIEF

**INTERNATIONAL AND INTERSTATE HATE CRIME ACTS; STATE TERRORISM; STATE-SPONSORED TERRORISM; INTERNATIONAL AND INTERSTATE TERRORISM ACTIVITIES; PROVIDING MATERIAL SUPPORT TO TERRORIST; AND PROVIDING MATERIAL SUPPORT OR RESOURCES TO DESIGNATED FOREIGN TERRORISTS ORGANIZATIONS THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

191.     Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 190 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

192.     Defendant(s), (1) – (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

193.     As a result of Defendant(s), (1) – (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT IX: NINTH CLAIM FOR RELIEF

**HONEST SERVICES FRAUD; SCHEME TO DEFRAUD USING FEDERAL MAIL FRAUD; SCHEME TO DEFRAUD USING FEDERAL WIRE FRAUD; FALSE INFORMATION AND HOAXES; FRAUDS AND SWINDLES; AND INJUNCTIONS AGAINST FRAUD THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

194.     Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 193 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

195.     Defendant(s), (1) – (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

196.    As a result of Defendant(s), (1) – (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT X: TENTH CLAIM FOR RELIEF

**SCHEME TO DEFRAUD USING INTERSTATE WIRE, RADIO, AND TELEVISION COMMUNICATIONS; SCHEME TO DEFRAUD USING INTERNATIONAL WIRE, RADIO, AND TELEVISION COMMUNICATIONS; MONEY LAUNDERING; ESPIONAGE, SABOTAGE, AND OTHER HOSTILE ACTS; AND JOINT CRIMINAL ENTERPRISE OF A COMMON PURPOSE TO COMMIT INTERSTATE AND INTERNATIONAL CRIMES IN BAD FAITH EVIL MINDED WITH INTENT TO IMPEDE, OBSTRUCT, OR INFLUENCE TO ACHIEVE POLITICAL, FINANCIAL, OR LEGAL PURPOSES THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

197.    Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 196 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

198.    Defendant(s), (1) – (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in *"Significant Damages specifically designed to directly cause the required threshold of harm"* in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

199.    As a result of Defendant(s), (1) – (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT XI: ELEVENTH CLAIM FOR RELIEF

**SUBJUGATION AND THE ACTION OF BRINGING SOMEONE OR SOMETHING UNDER DOMINATION OR CONTROL TO DEFEAT AND GAIN CONTROL OF PEOPLE OR A COUNTRY AND RULE THEM IN A WAY THAT ALLOWS THEM NO FREEDOM IN BAD FAITH EVIL MINDED WITH INTENT TO IMPEDE, OBSTRUCT, OR INFLUENCE TO ACHIEVE POLITICAL, FINANCIAL, OR LEGAL PURPOSES THAT RESULTED IN DAMAGES TO PLAINTIFF(S).**

200.    Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 199 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

201.    Defendant(s), (1) – (26), showed misconduct and accomplice liability by violating the (United States Constitution),

(Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

202.     As a result of Defendant(s), (1) – (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### COUNT XII: TWELFTH CLAIM FOR RELIEF

#### NON-CONSENSUAL HUMAN EXPERIMENTION; FEAR OF EARLY DEATH; CONSPIRACY TO COMMIT FEAR OF EARLY DEATH; AND POLITICAL REPRESSION THAT RESULTED IN DAMAGES TO PLAINTIFF(S).

203.     Plaintiff(s) repeats, re-alleges, and incorporates by reference the allegations contained in all prior paragraphs 1 through 202 above of this Complaint and incorporates the same paragraphs in the counts below as though set forth fully herein.

204.     Defendant(s), (1) – (26), showed misconduct and accomplice liability by violating the (United States Constitution), (Laws of the United States of America), (International Laws and Treaties of the United States of America), (International Laws and Treaties of the Host Nation of Afghanistan), the (Laws of War), the (Law of Nations), and the (Law of Nature). Defendant(s), (1) – (26), conducted the above criminal acts against Plaintiff(s) that are in direct connection with previous criminal acts that went beyond the justification of military necessity and are incompatible with the purposes and principles of the Charter of the United Nations and resulted in "*Significant Damages specifically designed to directly cause the required threshold of harm*" in support of a party to the Afghanistan Armed Conflict (Aiding the Enemy) and to the detriment of another (Plaintiff(s)).

205.     As a result of Defendant(s), (1) – (26), showing misconduct and accomplice liability conducting the above criminal acts against Plaintiff(s) that resulted in damages to Plaintiff(s) set forth fully herein, Plaintiff(s) are entitled to judgment of Nominal; Compensatory; Punitive; and Treble Damages as a consequence of the serious violations of Defendant(s) described herein (Tax Free with No Restrictions Attached Whatsoever).

### RIGHTS VIOLATED BY DEFENDANT(S) AND RIGHTS CLAIMED BY PLAINTIFF(S)

206.     Defendant(s) violated Plaintiff(s) following "Domestic and International Rights", and Plaintiff(s) hereby Claims "Domestic and International Rights" under all of the following:

   A.   Plaintiff(s) (**Constitutional Rights**), specifically:

41

(1) First Amendment to the United States Constitution, which protects cognitive liberty and freedom of thought;

(2) First Amendment to the United States Constitution, **Religious Freedom Provision** which protects **Religious Freedom** founded on **Natural Law** – *that all rights are granted by God to the individual and therefore cannot be constrained by man or by the government*– the Constitution is a "*written guarantee*" of those rights. It gives citizens redress when God-given liberty is "*obstructed*". ***Given by the Creator, Plaintiff(s) rights pre-date stone tablets and inform our written laws.*";

(3) Fourth Amendment to the United States Constitution, which protects against unreasonable searches and seizures (including seizing a person's body);

(4) Fifth and Fourteenth Amendments to the Constitution Due Process clause, which both state that no one should be deprived of "life, liberty, or property without due process of law", and calls for the equal protection of all peoples and their rights to be protected, granted to citizens by the Bill of Rights;

(5) Eighth Amendment to the United States Constitution, which protects against the Infliction of Cruel and Unusual Punishment; and

(6) Thirteenth Amendment to the United States Constitution, which protects against slavery and involuntary servitude.

B.  Plaintiff(s) **(Laws of War Rights)**, which as the "*Lex Specialis*" of armed conflict, is the controlling body of law with regard to the "Conduct of Hostilities" and the "Protection of War Victims", specifically:

(1) Law of War § 1.3.2.1 The Law of War as the Lex Specialis Governing Armed Conflict;

(2) Law of War § 1.6.3 Human Rights Treaties;

(3) Law of War § 1.6.3.4 Convention Against Torture;

(4) Law of War § 1.10.1.4 Force of International Law Notwithstanding a State's Domestic Law;

(5) Law of War § 4.17.3 Saboteurs and Other Persons Engaging in Secretive, Hostile Acts Behind Enemy Lines;

(6) Law of War § 4.18.4 Activities That Constitute "Engaging in Hostilities" by Private Persons;

(7) Law of War § 4.19.4 Unprivileged Belligerents – Liability for Participation in Hostilities;

(8) Law of War § 6.6 WEAPONS CALCULATED TO CAUSE SUPERFLUOUS INJURY;

(9) Law of War § 6.6.1 Superfluous Injury or Unnecessary Suffering– Notes on Terminology;

(10) Law of War § 6.6.2 Superfluous Injury Rule – the Principle of Humanity;

(11) Law of War § 6.6.3 Applying the Superfluous Injury Rule;

(12) Law of War § 6.6.3.2 Suffering and Injury Inflicted;

(13) Law of War § 6.6.3.3 Clearly Disproportionate;

(14) Law of War § 6.6.3.4 Superfluous Injury Rule – the Circumstances to Be Assessed and Design Intent;

(15) Law of War § 7.5.2.1 Prohibitions Against Willful Medical Neglect or Deliberate Endangerment;

(16) Law of War § 7.5.2.2 Affirmative Obligation to Provide Adequate Care;

(17) Law of War § 8.2.4 Threats to Commit Inhumane Treatment;

(18) Law of War § 10.5 HUMANE TREATMENT AND OTHER BASIC PROTECTIONS FOR PROTECTED PERSONS;

(19) Law of War § 10.5.1 Protection Against Violence or Threats;

(20)  Law of War § 10.5.1.1 Measures of Physical Suffering, Extermination, or Other Brutality;

(21)  Law of War § 10.5.3 Other Prohibited Measures;

(22)  Law of War § 10.5.3.2 Collective Penalties and Measures of Intimidation or Terrorism;

(23)  Law of War § 10.5.3.3 Pillage Against Protected Persons;

(24)  Law of War § 10.5.4 Reprisals Against Protected Persons and Their Property;

(25)  Law of War § 10.5.5 No Adverse Distinction Based on Race, Religion, or Political Opinion;

(26)  Law of War § 10.7 GENERAL TREATMENT OF PROTECTED PERSONS IN A BELLIGERENT'S HOME TERRITORY;

(27)  Law of War § 17.2.1.2 Implicit Application of Treaty Provisions to Situations in Non-International Armed Conflict;

(28)  Law of War § 18.1.2 National Obligations to Implement and Enforce the Law of War;

(29)  Law of War § 18.12.2 Determining Liability and Determining That Compensation Should Be Paid;

(30)  Law of War § 18.16 COMPENSATION FOR VIOLATIONS OF THE LAW OF WAR;

(31)  Law of War § 18.22 PRINCIPLES OF INDIVIDUAL CRIMINAL RESPONSIBILITY FOR CRIMES UNDER INTERNATIONAL LAW;

(32)  Law of War § 18.22.1 Individual Criminal Responsibility for Acts Constituting Crimes Under International Law;

(33)  Law of War § 18.22.2 Absence of Penalty Under Domestic Law Does Not Relieve a Person of Responsibility;

(34)  Law of War § 18.22.3 Official Position Does Not Relieve a Person of Responsibility;

(35)  Law of War § 18.22.4 Acting Pursuant to Orders Does Not Relieve a Person of Responsibility;

(36)  Law of War § 18.23.3 Command Responsibility;

(37)  Law of War § 18.23.3.1 Command Responsibility as a Distinct Offense;

(38)  Law of War § 18.23.3.2 Command Responsibility as a Mode of Liability for an Offense;

(39)  Law of War § 18.23.4 Aiding and Abetting;

(40)  Law of War § 18.23.4.1 Aiding and Abetting as a Principle of State Responsibility;

(41)  Law of War § 18.23.4.2 Aiding and Abetting Certain Conduct as a Distinct Offense Instead of a Mode of Liability for Offense;

(42)  Law of War § 18.23.5 Conspiracy;

(43)  Law of War § 18.23.5.2 Conspiracy to Commit Aggressive War;  and

(44)  Law of War § 18.23.6 Other Group Criminality Theories – Joint Criminal Enterprise.

C.  Plaintiff(s) (International Laws and Treaties Rights), specifically:

(1)  The 5th century B.C. Hippocratic Oath which reaches beyond the doctor-patient relationship to the relationship of both doctor and patient with the Gods in whom they believe and who will hold them to account;

(2)  The 1758 Law of Nations and the Principles of the Law of Nature Applied to the Conduct and Affairs of Nations and Sovereigns which Modernized the Entire Practice of International Law;

(3)  The 1864 International Convention for the Amelioration of the Condition of the Wounded in Armies in the Field;

(4) The 1926 International Slavery Convention to Suppress Slavery and the Slave Trade Treaty;

(5) The 1945 United Nations Charter (entered into force on October 24, 1945);

(6) The 1945 Charter of the International Military Tribunal (Nuremberg);

(7) The 1946 Judgement of the International Military Tribunal at Nuremberg and the 1947 Nuremberg Principles formulated under the United Nations General Assembly Resolution 177 21 November 1947 to satisfy moral, ethical, and legal concerns in cases of (War Crimes) and (Human Experimentation);

(8) The 1949 First Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces in the Field;

(9) The 1949 Fourth Geneva Convention relative to the Protection of Civilian Persons in Time of War;

(10) The 1950 United Nations International Law Commission (ILC) Principles of International Law recognized in the Charter of the Nuremberg Tribunal and in the Judgment of the Tribunal;

(11) The 1953 United Nations Protocol amending the Slavery Convention signed at Geneva on 25 September 1926;

(12) The 1956 United States Field Manual;

(13) The 1956 United Nations International Supplementary Convention on the Abolition of Slavery, the Slave Trade, and Institutions and Practices similar to Slavery;

(14) The 1966 United Nations International Covenant on Civil and Political Rights Treaty (ICCPR);

(15) The 1968 United Nations Convention on the Non-Applicability of Statutory Limitations to War Crimes and Crimes Against Humanity;

(16) The 1969 Vienna Convention of the Law of Treaties  ([*j*]*us cogens* or peremptory norms of general international law);

(17) The 1977 Geneva Protocol II Additional to the Geneva Conventions of 12 August 1949, and relating to the Protection of Victims of Non-International Armed Conflicts;

(18) The 1978 Red Cross Fundamental Rules of International Humanitarian Law Applicable in Armed Conflicts;

(19) The 1980 United Nations International Convention on Prohibitions or Restrictions on the Use of Certain Conventional Weapons Which May be Deemed to be Excessively Injurious or to Have Indiscriminate Effects (CCW);

(20) The 1984 United Nations International Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment Treaty (CAT);

(21) The 1996 United Nations International Law Commission's (ILC) Draft Code of Crimes against the Peace and Security of Mankind;

(22) The 2000 United Nations International Convention Against Transnational Organized Crime (UNTOC);

(23) The 2001 United Nations International Law Commission (ILC) Draft Articles on the Responsibility of States for Internationally Wrongful Acts;

(24) The 2003 United Nations International Convention Against Corruption (UNCAC);

(25) The 2005 United Nations Updated Set of Principles for the Protection and Promotion of Human Rights Through Action to Combat Impunity; and

(26) The 2005 United Nations Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law.

## SUM OF DAMAGES DAMADED

207.    Plaintiff(s) respectfully request award of (NOMINAL), (COMPENSATORY), and (PUNITIVE) Damages (Tax Free with No Restrictions Attached) in the sum of "Five-Hundred Million" dollars ($500,000,000) as a consequence of the serious violations of Defendant(s) described herein.

208.    Plaintiff(s) respectfully request award of (TREBLE) Damages (Tax Free with No Restrictions Attached) in the sum of "One-Billion, Five Hundred Million" dollars ($1,500,000,000) per 18 U.S.C. §§ 1961-1968 (RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT) as a consequence of the serious violations of Defendant(s) described herein.

## VICTIM IMPACT STATEMENT

209.    Plaintiff(s) received "Permanent Personal Injury" of "Superfluous Mental Injury" from (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) and "Significant Injury" of (Extraordinary Suffering) from further "Superfluous Mental Injury" and "Financial Destruction" and (FEAR OF EARLY DEATH).

210.    Plaintiff(s) was diagnosed with (Adjustment Disorder), (Anxiety Disorder), (Depressed Mood Disorder), (Post Traumatic Stress Disorder), (Panic Disorder), and (Situational Depression Disorder) from severe pain and suffering from (Psychological and Emotional Abuse) and (Prolonged Mental Harm) caused by the Defendant(s).

211.    Plaintiff(s) "Lost" HIS (SELF), (Dignity of Self), (Complete Trust in Others), (Positive Mindset of Self), (Personal Interest of Self), (Emotional Stability of Self), (Security of Self), (Comfort in Living with Self), (Self-Esteem), (Self-Worth), (International Corporation), (Earnings), (Earning Potential), (Opportunities), (Employment), (Career), (Livelihood), (SEP IRA Account), (Checking Account), (Savings Account), (Credit), (Foreclosed on House), (Las Vegas Residence), (Personal Possessions), (3 cars and a motorcycle), (Nevada Driver's License), (State of Nevada Residency), (Substantive Guarantees), (Liberties and Freedoms), causing (Avoidance of Social Interaction), (Sensory Sensitivity), (Extra Sensory Perception), (Remote Viewing), (Intrusive Thoughts) and (Extreme Sensitivity) to Negative Environments, (Major Sleep Deprivation), (Prolonged Isolation), (Constantly Forgetful) and (Completely Hopeless), (Restless) and (Exhausted), (In Existential Despair) and (In Existential Distress) on a daily basis, (In Existential Crisis), (Introspection of Self), (Frustrated) and (Very Irritated and Annoyed), (Hurt) and (Still in Shock), (Completely Lost) and (All Alone), (Very Scared) and (Totally Vulnerable), (Threatened), (Punished), (Abused), (Discriminated Against), (Assaulted), (Treated Inhumanely), (Tortured), (Enslaved), (Subjugated), (Terrorized), (Harmed), (Injured), (Degraded), (Defeated), (Oppressed), (Psychologically Repressed), (Emotionally Repressed), (Spied on), (Betrayed), (Overly Dominated), (Controlled), (Governed), (Deprived), (So Ashamed), (Completely Humiliated), (Very Violated) and (So Disturbed), (Devastated), (Destroyed), (Taken Advantage of), (Disgusted), (Disgraced), (Very Disappointed with Self), (Very Dissatisfied with one's life), (Terrifying Nightmares), (Paralyzed) and in a (State of Coma),

45

(Can't Run Away from Self, which have to live with Forever), and (FEAR OF EARLY DEATH).

212.     Defendant(s) (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) were *conducted* on

Plaintiff(s) who (Did Not Consent).

> "In no case was the experimental subject at liberty of his own free
>
> choice to withdraw from any 'experiment'."

213.     Defendant(s) (Torture Techniques), (Subjugation), and (Non-Consensual Human Experimentation) *caused*

(Extraordinary Suffering) and (Superfluous Mental Injury) to Plaintiff(s).

> "In every one of the 'experiments' the subject experienced extreme
>
> pain and torture, and suffered permanent injury, as a direct result of
>
> the 'experiments' and because of 'lack of adequate follow-up care'."

## **PRAYER FOR RELIEF**

214.     WHEREFORE, Plaintiff(s) prays for judgment against the Defendant(s) on all 12 Counts and respectfully request that

this Court enter each of the following forms of such relief as specified below for all 12 Counts for which such relief is provided

by international and domestic law:

(1)  Plaintiff(s) respectfully request to be respected and to have all of Plaintiff(s) United States Constitutional rights, to include all of Plaintiff(s) United States Laws of War rights and International rights and "Non-Derogable Inalienable" rights to be totally enforced;

(2)  Plaintiff(s) respectfully DEMAND a Trial by Jury;

(3)  Award Plaintiff(s) immediate Injunctive and Declaratory relief;

(4)  Award Plaintiff(s) (REDRESS) and (RESTITUTION) which restores the victim to the original situation before the …violations… occurred. Restitution includes, as appropriate: restoration of liberty, enjoyment of human rights, identity, family life and citizenship, return to one's place of residence, restoration of employment and return of property; and Award (Back-Pay of Royalties) and (Penalties) from all Defendant(s) be paid immediately;

(5)  Award Plaintiff(s) (NOMINAL), (COMPENSATORY), and (PUNITIVE) Damages (Tax Free with No Restrictions Attached) in the sum of "Five Hundred Million" dollars ($500,000,000) as a consequence of the serious violations of Defendant(s) described herein;
Compensation should be provided for any economically assessable damage, as appropriate and proportional to the gravity of the violations and the circumstances of the case…, such as: (a)   Physical or Mental Harm; (b)   Lost Opportunities, including Employment, Education and Social Benefits; (c)   Material damages and Loss of Earnings, including Loss of Earning Potential; (d)   Moral damage; (e)   Costs required for legal or expert assistance, Medicine and Medical Services, Psychological and Social Services;   It may be retained that compensation must not only cover directly economically assessable damage such as lost earnings and other patrimonial damages, compensation must also encompass financial reparation for physical or mental suffering. As this damage is not economically quantifiable, the assessment must be made in equity. Since it is difficult to provide evidence for certain Moral and Psychological effects of Torture and Non-Consensual Human Experimentation, Mental Harm in the concept of "***maux superflus***" ("Superfluous Injury and Unnecessary Extraordinary Suffering") should always be presumed as a consequence of violations of **Peremptory Norms** (also called **jus cogens** or ius cogens /ˌdʒʌs ˈkoʊdʒɛnz, ˌjʌs/; Latin for "compelling **law**");

(6)  Award Plaintiff(s) (TREBLE) Damages (Tax Free with No Restrictions Attached) in the sum of "One-Billion, Five Hundred Million" dollars ($1,500,000,000) per 18 U.S.C. §§ 1961-1968 (RACKETEER INFLUENCED

AND CORRUPT ORGANIZATIONS ACT) as a consequence of the serious violations of Defendant(s) described herein;

(7)   Award Plaintiff(s) (SATISFACTION) including all of the following: (a)   Effective measures aimed at the cessation of continuing violations; (b)   Verification of the facts and full and public disclosure of the truth to the extent that such disclosure does not cause further harm or threaten the safety and interests of the victim, the victim's relatives, witnesses, or persons who have intervened to assist the victim or prevent the occurrence of further violations; (c)   An official declaration or a judicial decision restoring the dignity, the reputation and the rights of the victim and of persons closely connected with the victim; (d)   Public apology, including acknowledgement of the facts and acceptance of responsibility; (e)   Judicial and administrative sanctions against persons liable for the violations; (f)   Commemorations and tributes to the victims; (g)   Inclusion of an accurate account of the violations that occurred in international human rights law and international humanitarian law training and in educational material at all levels;

(8)   Grant such other relief as may be just and proper.

DATED: February 22, 2021.

## TRIAL BY JURY DEMAND

215.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure as declared by the Seventh Amendment to the United States Constitution, Plaintiff(s) respectfully DEMANDS TRIAL BY JURY for all 12 Counts for which such relief is provided by international and domestic law in this action of all issues so triable.

## UNDER PENALTY OF PERJURY

216.          Plaintiff(s), I, JOHN KEITH HEBERT, IC "Plata", President of INTERNATIONAL DEFENSE CORPORATION, hereby Do Declare On OATH under penalty of perjury under the (United States Constitution), the (Laws, Treaties, Agreements, Contracts, Sub-Contracts, and Assurances of the United States of America), the (Laws, Treaties, Agreements, Contracts, Sub-Contracts, and Assurances of the Host Nation of Afghanistan), that the foregoing is True and Correct.

Executed On 22 FEB 2021.

Respectfully submitted,

John Keith Hebert, IC "Plata",
President of International Defense Corporation,
4711 Renie Road,
Erath, Louisiana 70533

## SUPPORTING CASES

➢ In *Murray v. the Charming Betsy*, (1804), the Supreme Court ruled that, whenever possible, statutes should be interpreted so that they comply with the Law of Nations;

➢ In *United States v. Greiner*, (1861, D. C. E. D. Pa.) Fed. Case No. 15,262. *"It is held that joining the enemy is the most flagrant instance of the crime of treason and nothing except the fear of death can excuse it."*;

➢ In *United States v. Lee*, 106 U.S. 196, 220 (1882) *"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it."*;

➢ In the *Quirin* case in 1942, the United States Supreme Court held: *"From the very beginning of its history this Court has applied the law of war, including that part of the law of nations which prescribes for the conduct of war, the status, rights and duties of enemy nations as well as enemy individuals."*;

➢ *Ex Parte Quirin*, 317 U.S. 1, 23 (1942) ("On July 3, 1942, the Judge Advocate General's Department of the Army prepared and lodged with the Commission the following charges against petitioners, supported by specifications: 1. Violation of the law of war. 2. Violation of Article 81 of the Articles of War, defining the offense of relieving or attempting to relieve, or corresponding with or giving intelligence to, the enemy. 3. Violation of Article 82, defining the offense of spying. 4. Conspiracy to commit the offenses alleged in charges 1, 2 and 3.");

➢ *Ex Parte Quirin, 317 U.S. 1 (1942)*, the Court unanimously held that the President could use a military commission, whose procedures did not follow those required by the Bill of Rights in criminal proceedings before Article III courts, to try American citizens who had served as enemy belligerents against the United States. *See generally* Memorandum for Alberto R. Gonzales, Counsel to the President, from Patrick F. Philbin, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Legality of the Use of Military Commissions to Try Terrorists* (Nov. 6, 2001) (the "OLC Military Commissions Memo"). Thus, there would be no constitutional barrier to using a military commission to try the Defendant(s);

➢ The *Nuremburg Trials* on the Holocaust 1945 – 1949, in the midst of World War II, the Allies issue a joint declaration in 1942 that notes the mass execution of Jews occurring under the German Nazi regime and calls for the perpetrators to face punishment. Three years later, the Nuremberg Trials, the first international war crimes trials, try to bring surviving leaders of the Nazi regime and engineers of the Holocaust to justice. The trials last four years, beginning with the Major War Figures Case, which comes before the International Military Tribunal established by the Allied forces. Eleven of the twenty-four defendants are sentenced to death. The United States conducts twelve additional trials that result in sixty-five convictions and more than twenty death sentences;

➢ In the *Postwar Trial* of a Japanese General in 1945, a U.S. military commission in Manila tries Japanese General Yamashita Tomoyuki for war crimes committed against prisoners of war and civilians in the Philippines in 1945. The commission convicts Yamashita on command responsibility grounds, which the U.S. Supreme Court upholds despite strong dissent from two justices, and he is sentenced to death. Yamashita is executed in 1946;

➢ Douglas MacArthur, Supreme Commander for the Allied Powers, *Special Proclamation: Establishment of an International Military Tribunal for the Far East*, Jan. 19, 1946, 4 BEVANS 20, 21 ("Now, therefore, I, Douglas MacArthur, as Supreme Commander for the Allied Powers, by virtue of the authority so conferred upon me, in order to implement the Term of Surrender which requires the meting out of stern justice to war criminals, do order and provide as follows: ARTICLE 1. There shall be established an International Military Tribunal for the Far East for the trial of those persons charged individually, or as members of organizations, or in both capacities, with offenses which include crimes against peace.");

➢ In the *Tokyo War Crimes Trials* 1946 – 1948, under the watch of U.S. Supreme Commander Douglas MacArthur, the International Military Tribunal of the Far East prosecutes twenty-eight high-ranking Japanese leaders for war crimes committed during World War II, including the killing and inhumane treatment of prisoners of war and civilian

internees, as well as the destruction and mass murder of civilian populations in other countries. The most famous case is the conviction and execution of former Prime Minister Tojo Hideki. All of the defendants are found guilty, with sentences ranging from seven years in prison to execution. The Yokohama War Crimes Trials, for defendants charged with B- and C-class crimes, are held in the aftermath of the Tokyo trials before a U.S. military commission;

➤ The 1946 Judgment of the _International Military Tribunal at Nuremberg_ states: _…waging of aggressive war "essentially an evil thing…to initiate a war of aggression…is not only an international crime; it is the supreme international crime, differing only from other war crimes in that it contains within itself the evil of the whole." "The very essence of the Charter is that individuals have international duties which transcend the national obligations of obedience imposed by the individual State. He who violates the laws of war cannot obtain immunity while acting in pursuance of the authority of the State…";_

➤ In the _Altstötter case (The Justice Trial)_ in 1947, the U.S. Military Tribunal at Nuremberg rejected arguments by the defendants, judges of the State, that international law was concerned with the actions of sovereign States and did not provide punishment for individuals, holding that it had long been established that international law imposed duties and liabilities upon individuals as well as upon States;

➤ In its judgement in the _Milch_ case in 1947, the U.S. Military Tribunal at Nuremberg found the accused guilty of conducting medical experiments on prisoners of war and inhabitants of occupied territories without their consent;

➤ In the _Brandt case (The Medical Trial)_ in 1947, the U.S. Military Tribunal at Nuremberg convicted 16 persons of carrying out medical experiments on prisoners of war and civilians which amounted to cruel and inhuman treatment and which were war crimes and crimes against humanity;

➤ In its judgment in the _Pohl_ case in 1947, the U.S. Military Tribunal at Nuremberg, in considering charges of war crimes and crimes against humanity, held: _"Slavery may exist even without torture. Slaves may be well fed, well clothed, and comfortably housed, but they are still slaves if without lawful process they are deprived of their freedom by forceful restraint. We might eliminate all proof of ill-treatment, overlook the starvation, beatings, and other barbarous acts, but the admitted fact of slavery – compulsory uncompensated labour – would still remain. There is no such thing as benevolent slavery. Involuntary servitude, even if tempered by humane treatment, is still slavery.";_

➤ In the _Milch_ case in 1947, the U.S. Military Tribunal at Nuremberg found the accused guilty of war crimes in that he was responsible for the slave labour and deportation to slave labour of the civilian populations of countries and territories occupied by the German armed forces, and in the enslavement, deportation, ill-treatment and terrorization of such persons. The Tribunal found the accused guilty of crimes against humanity for the same war crimes insofar as they related to foreign nationals. Judge Fitzroy D Phillips referred to the definition of crimes in the 1945 Allied Control Council Law No. 10 and stated in his concurring opinion that the law treats as separate crimes and different types of crime deportation to slave labour (as a war crime) and enslavement (as a crime against humanity);

➤ In the _Flick_ case in 1947, the U.S. Military Tribunal at Nuremberg noted: _"It can no longer be successfully maintained that international law is concerned only with the actions of sovereign states and provides no punishment for individuals."_ The Tribunal also rejected the argument that the fact that the defendants were private individuals rather than public officials representing the State meant that they could not be criminally responsible for a violation of international law. Instead, it held: _"International law … binds every citizen just as does ordinary municipal law … The application of international law to individuals is no novelty.";_

➤ In the _List case (The Hostages Trial)_ in 1948, the U.S. Military Tribunal at Nuremberg found the defendants guilty of committing acts of "deportation to slave labour of prisoners of war and members of the civilian populations in territories occupied by the German Armed Forces";

➤ _Charter of the International Military Tribunal_, art. 6, annexed to Agreement by the Government of the United Kingdom of Great Britain and Northern Ireland, the Government of the United States of America, the Provisional Government of the French Republic and the Government of the Union of Soviet Socialist Republics for the Prosecution and Punishment of the Major War Criminals of the European Axis, Aug. 8, 1945, 82 UNTS 280, 288 ("The following acts, or any of them, are crimes coming within the jurisdiction of the Tribunal for which there shall be individual responsibility:– (a) _Crimes against peace:_ namely, planning, preparation, initiation or waging of a war of aggression, or

a war in violation of international treaties, agreements or assurances, or participation in a common plan or conspiracy for the accomplishment of any of the foregoing;");

➤ In *United States, et al. v. Göring*, *et al.*, *Judgment*, I TRIAL OF THE MAJOR WAR CRIMINALS BEFORE THE IMT 254 ("To constitute Crimes against Humanity, the acts relied on before the outbreak of war must have been in execution of, or in connection with, any crime within the jurisdiction of the Tribunal. The Tribunal is of the opinion that revolting and horrible as many of these crimes were, it has not been satisfactorily proved that they were done in execution of, or in connection with, any such crime. The Tribunal therefore cannot make a general declaration that the acts before 1939 were Crimes against Humanity within the meaning of the Charter, but from the beginning of the war in 1939 War Crimes were committed on a vast scale, which were also Crimes against Humanity; and insofar as the inhumane acts charged in the Indictment, and committed after the beginning of the war, did not constitute War Crimes, they were all committed in execution of, or in connection with, the aggressive war, and therefore constituted Crimes against Humanity.");

➤ In *United States, et al. v. Göring*, *et al.*, *Judgment*, I TRIAL OF THE MAJOR WAR CRIMINALS BEFORE THE IMT 226 ("Count One, however, charges not only the conspiracy to commit aggressive war, but also to commit War Crimes and Crimes against Humanity. But the Charter does not define as a separate crime any conspiracy except the one to commit acts of aggressive war.");

➤ In *United States, et al. v. Göring*, *et al.*, *Judgment*, I TRIAL OF THE MAJOR WAR CRIMINALS BEFORE THE IMT 256 ("If satisfied of the criminal guilt of any organization or group, this Tribunal should not hesitate to declare it to be criminal because the theory of 'group criminality' is new, or because it might be unjustly applied by some subsequent tribunals. On the other hand, the Tribunal should make such declaration of criminality so far as possible in a manner to insure that innocent persons will not be punished. A criminal organization is analogous to a criminal conspiracy in that the essence of both is cooperation for criminal purposes. There must be a group bound together and organized for a common purpose. The group must be formed or used in connection with the commission of crimes denounced by the Charter. Since the declaration with respect to the organizations and groups will, as has been pointed out, fix the criminality of its members, that definition should exclude persons who had no knowledge of the criminal purposes or acts of the organization and those who were drafted by the State for membership, unless they were personally implicated in the commission of acts declared criminal by Article 6 of the Charter as members of the organization. Membership alone is not enough to come within the scope of these declarations.");

➤ In *United States v. Ohlendorf*, *et al.* (Einsatzgruppen Case), IV TRIALS OF WAR CRIMINALS BEFORE THE NMT 372 ("In line with recognized principles common to all civilized legal systems, ¶ 2 of Article II of Control Council Law No. 10 specifies a number of types of connection with crime which are sufficient to establish guilt. Thus, not only are principals guilty but also accessories, those who take a consenting part in the commission of crime or are connected with plans or enterprises involved in its commission, those who order or abet crime, and those who belong to an organization or group engaged in the commission of crime.");

➤ U.N. International Law Commission, Principles of International Law Recognized in the *Charter of the Nürnberg Tribunal and in the Judgment of the Tribunal*, in Report of the International Law Commission on its Second Session, 5 June to 29 July 1950, (Document A/1316), reprinted in II YEARBOOK OF INTERNATIONAL LAW COMMISSION 1950, 374 U.N. Doc. A/CN. 4/SER.A/1950/Add. 1 (Jun. 6, 1957) ("PRINCIPLE II The fact that internal law does not impose a penalty for an act which constitutes a crime under international law does not relieve the person who committed the act from responsibility under international law.");

➤ In *Colepaugh v. Looney*, 235 F.2d 429, 431 (10th Cir. 1956) ("January 11, 1945, by executive order, the President charged the petitioner with violation of the law of war and…to convene a military commission for trial of such offenses. The first charge specified: (1) … the petitioner and one Gimpel, acting for the German Reich, secretly passed through, in civilian dress, contrary to the law of war, the military and naval lines of the United States for the purpose of committing espionage, sabotage and other hostile acts; and (2) that the accused … appeared and remained in civil dress, contrary to the law of war behind the military lines of the United States for the purpose of committing espionage, sabotage and other hostile acts. The second charge alleged … the petitioner and one Gimpel, acting for the German Reich, were, in time of war, found lurking and acting as spies in and about the fortifications, posts and encampments … of the United States …, for the purpose of obtaining intelligence and communicating it to the German Reich. The third charge alleged a conspiracy to commit the above substantive offenses.");

➢ In *Reid v. Covert*, 354 U.S. 1 (1956); Toth v. Quarles. 350 U.S. 11 (1955); Duncan v. Kahanamoku, 327 U.S. 304 (1946); Ex parte Milligan, 71 U.S. 2 (1866); (when the United States is a party to such Protocol, willfully kills or causes serious injury to civilians."); 262 *See, e.g.*, Robert Gates, Secretary of Defense, *Memorandum re: UCMJ Jurisdiction Over DoD Civilian Employees, DoD Contractor Personnel, and Other Persons Serving With or Accompanying the Armed Forces Overseas During Declared War and in Contingency Operations*;

➢ *See, e.g.*, 1956 FM 27-10 (Change No. 1 1976) ¶500 ("Conspiracy, direct incitement, and attempts to commit, as well as complicity in the commission of, crimes against peace, crimes against humanity, and war crimes are punishable."); Memorandum of Law from Tom C. Clark, Assistant Attorney General, to Major General Myron C. Kramer, Judge Advocate General, 6 (Mar. 12, 1945) ("In view of the statements of the authorities on military law set forth above, and the precedents established in the proceedings referred to above, it may be said to be well established that a conspiracy to commit an offense against the laws of war is itself an offense cognizable by a commission administering military judgment.");

➢ In *Filartiga v. Pena-Irala*, 1980, a federal appeals court judge ruled that, under customary international law, "the torturer has become – like the pirate and slave trader before him – hostis humani generis, an enemy of all mankind." The judge consequently affirmed that foreign torture victims could seek civil remedies in the U.S. under the Alien Tort Statute, a 1789 law permitting lawsuits by non-citizens for torts committed in violation of the Law of Nations;

➢ In *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980), was a landmark case in United States and international law. It set the precedent for United States federal courts to punish non-American citizens for tortious acts committed outside the United States that were in violation of public international law (the law of nations) or any treaties to which the United States is a party. It thus extends the jurisdiction of United States courts to tortious acts committed around the world. The case was decided by a panel of judges from the United States Court of Appeals for the Second Circuit consisting of Judges Feinberg, Kaufman, and Kearse. U.S. courts eventually ruled in favor of the Filártigas, awarding them roughly $10.4 million. Torture was clearly a violation of the law of nations, and the United States did have jurisdiction over the case since the claim was lodged when both parties were inside the United States. Additionally, Peña had sought to dismiss the case based on *forum non conveniens*, arguing that Paraguay was a more convenient location for the trial, but he did not succeed;

➢ Following the judgment in *Filártiga*, there was a concern that the U.S. would evolve into a haven for international tort claims. In *Kadic v Karadžić* (1995), groups of Bosnian Croats and Muslims commenced proceedings against Serbia for war crimes in an American domestic court, with Radovan Karadžić being in the U.S. at the time. Karadžić was found not to be immune;

➢ Following the *Karadžić* judgment, it was ruled in *Sosa v. Alvarez-Machain* 542 U.S. 692 (2004) that Congress intended with the Alien Torts Statute that extraterritorial jurisdiction was allowed for only the most egregious international crimes. This was further limited in *Kiobel v. Royal Dutch Petroleum Co.*, where it was affirmed that there was a strong presumption against extraterritoriality, causes of action must also apply to the American domestic Alien Torts Act and not to acts committed outside the United States. The Court concluded that nothing in the Statute's text was sufficient to overcome the assumption against extraterritoriality;

➢ In *PROSECUTOR V FURUNDZIJA*: 1 APR 1999 (International Criminal Tribunal for the Former Yugoslavia) The court described the main features of the law against torture: 'There exists today universal revulsion against torture: as a USA Court put it in Filartiga v. Pena-Irala, 'the torturer has become, like the pirate and the slave trader before him, hostis humani generis, an enemy of all mankind'. This revulsion, as well as the importance States attach to the eradication of torture, has led to the cluster of treaty and customary rules on torture acquiring a particularly high status in the international normative system, a status similar to that of principles such as those prohibiting genocide, slavery, racial discrimination, aggression, the acquisition of territory by force and the forcible suppression of the right of peoples to self-determination. The prohibition against torture exhibits three important features, which are probably held in common with the other general principles protecting fundamental human rights. The Prohibition Even Covers Potential Breaches;

➢ Argentina's *Trial of the Juntas* 1985, the Argentine government initiates trials for members of the military that ruled during the so-called Dirty War (1976–1983), for mass kidnappings and killings of left-wing activists, political opponents, and sympathizers. The Trial of the Juntas is the first in Latin America to bring former dictators to justice by

iv

a civilian, democratic government. In December 1985, several former military officials are convicted for crimes against humanity, with a life sentence for former de facto President General Jorge Videla. However, the next two presidents grant immunity to the remaining officers charged and pardon all those previously convicted. In 2003, President Nestor Kirchner replaces several members of Argentina's Supreme Court, which overturns the amnesty law in 2005 and pardons in 2007, prompting trials to restart. In June 2012, Videla is convicted for the kidnapping of babies from political opponents and sentenced to fifty years in prison. He dies in May 2013 while serving his sentence;

➢ In 1991, in a diplomatic note to Iraq, the _United States_ stated: *"The Government of the United States reminds the Government of Iraq that under International Law, violations of the Geneva Conventions, the Geneva [Gas] Protocol of 1925, or related International Laws of armed conflict are war crimes, and individuals guilty of such violations may be subject to prosecution at any time … This includes members of the Iraqi armed forces and civilian government officials."* The execution of former Iraqi President Saddam Hussein took place on Saturday, 30 DEC 2006, after being convicted of Crimes against Humanity by the Iraqi Special Tribunal;

➢ In the _Karadžić_ case in 1995, a U.S. Court of Appeals considered a civil action brought by Bosnian victims of atrocities against Radovan Karadžić under, *inter alia*, the U.S. Alien Tort Claims Act which gives the U.S. courts jurisdiction over claims by aliens for torts committed in violation of the law of nations or treaties to which the United States is party. The Court emphasized that individuals could be held responsible, both criminally, and, as in this case, civilly, for violations of international law and noted: *"The liability of private individuals for committing war crimes has been recognized since World War I and was confirmed at Nuremberg after World War II, and remains today an important aspect of international law.";*

➢ Since the mid-1990s, as part of _NATO's_ Operation JOINT ENDEAVOR, Operation JOINT GUARD and Operation JOINT FORGE, and as part of _NATO's_ support to the European Union's Operation ALTHEA, the _United States_ has conducted operations to apprehend, transfer, and support the prosecution of Persons Indicted for **War Crimes** (PIFWC) in the ICTY;

➢ _International Tribunal for the Former Yugoslavia_ 1993 – 2017, a UN Security Council resolution establishes the International Criminal Tribunal for the Former Yugoslavia to try those responsible for mass killings of Bosnian Muslims, Croats, and Kosovo Albanians, as well as for abuses against ethnic Serbs, in the Balkans beginning in 1991. The most famous defendant is former President Slobodan Milosevic, whose trial begins in 2002. Milosevic is the first former head of state to be tried for war crimes, crimes against humanity, and genocide; however, he dies in a UN detention center in 2006 before his trial concludes. Between 1993 and 2019, the tribunal indicts 161 people, the majority of them ethnic Serbs, and sentences ninety. Radovan Karadzic and Ratko Mladic, the two Bosnian Serbs most responsible for the Srebrenica massacre—considered the worst human rights atrocity committed on European soil since World War II—are arrested in 2008 and 2011, respectively. In 2016, Karadzic is sentenced to forty years in prison, and the following year Mladic is handed a life sentence. Also in 2017, former Bosnian Croat General Slobodan Praljak fatally poisons himself in court upon hearing his guilty verdict;

➢ _Tribunal for Rwandan Genocide_ 1994 – 2015, the UN Security Council creates the International Criminal Tribunal for Rwanda (ICTR) to bring to justice those responsible for the 1994 genocide, in which an estimated eight hundred thousand people, many of them ethnic Tutsi, are massacred. Between 1995 and 2015, the ICTR completes ninety-three cases, nearly all against members of the Hutu ethnic majority and including that of former Prime Minister Jean Kambanda. Kambanda pleads guilty to six counts—including genocide—and is sentenced to life imprisonment for crimes against humanity. The tribunal formally closes at the end of 2015;

➢ Legal Battles of _Augusto Pinochet_ 1998 – 2006, former Chilean President Augusto Pinochet is arrested in October 1998 while seeking medical treatment in London. The warrant is issued by Spain's National Court on the basis that it had jurisdiction over crimes against humanity committed by dictatorships in Chile and Argentina. The court's ruling sets off an international dispute over where and how Pinochet should be tried, and after a yearlong legal battle, British officials rule he should not be extradited to Spain. Pinochet returns to Chile in 2000 and is subsequently indicted on a number of charges involving the forced disappearances and murders of political opponents. In the following years, he faces scrutiny over his mental capacity to stand trial and battles over his status of immunity from prosecution. In 2004, he is placed under house arrest in connection with nine kidnappings. Pinochet dies of congestive heart failure in December 2006 without being convicted for any of his alleged crimes;

> In *Prosecutor v. Tadić*, ICTY Appeals Chamber, IT-94-1-A, *Judgment*, ¶195 (Jul. 15, 1999) ("Many post-World War II cases concerning war crimes proceed upon the principle that when two or more persons act together to further a common criminal purpose, offences perpetrated by any of them may entail the criminal liability of all the members of the group. Close scrutiny of the relevant case law shows that broadly speaking, the notion of common purpose encompasses three distinct categories of collective criminality.");

> In *Prosecutor v. Tadić*, ICTY Appeals Chamber, IT-94-1-A, *Judgment*, ¶220 (Jul. 15, 1999) ("Secondly, in the so called 'concentration camp' cases, where the requisite *mens rea* comprises knowledge of the nature of the system of ill-treatment and intent to further the common design of ill-treatment. Such intent may be proved either directly or as a matter of inference from the nature of the accused's authority within the camp or organisational hierarchy.");

> In *Prosecutor v. Tadić*, ICTY Appeals Chamber, IT-94-1-A, *Judgment*, ¶220 (Jul. 15, 1999) ("With regard to the third category of cases, it is appropriate to apply the notion of 'common purpose' only where the following requirements concerning *mens rea* are fulfilled: (i) the intention to take part in a joint criminal enterprise and to further – individually and jointly – the criminal purposes of that enterprise; and (ii) the foreseeability of the possible commission by other members of the group of offences that do not constitute the object of the common criminal purpose. Hence, the participants must have had in mind the intent, for instance, to ill-treat prisoners of war (even if such a plan arose extemporaneously) and one or some members of the group must have actually killed them. In order for responsibility for the deaths to be imputable to the others, however, everyone in the group must have been able to *predict* this result. It should be noted that more than negligence is required. What is required is a state of mind in which a person, although he did not intend to bring about a certain result, was aware that the actions of the group were most likely to lead to that result but nevertheless willingly took that risk. In other words, the so-called *dolus eventualis* is required (also called 'advertent recklessness' in some national legal systems).");

> In *Prosecutor v. Tadić*, ICTY Appeals Chamber, IT-94-1-A, *Judgment*, ¶220 (Jul. 15, 1999) ("In sum, the Appeals Chamber holds … that the notion of common design as a form of accomplice liability is firmly established in customary international law and in addition is upheld, albeit implicitly, in the Statute of the International Tribunal. As for the objective and subjective elements of the crime, the case law shows that the notion has been applied to three distinct categories of cases. First, in cases of co-perpetration, where all participants in the common design possess the same criminal intent to commit a crime (and one or more of them actually perpetrate the crime, with intent).");

> In *Prosecutor v. Musema*, ICTR Trial Chamber I, ICTR-96-13-A, *Judgment and Sentence*, ¶185 (Jan. 27, 2000) ("The Chamber notes that the crime of conspiracy to commit genocide covered in the Statute is taken from the Genocide Convention. The 'Travaux Préparatoires' of the Genocide Convention suggest that the rationale for including such an offence was to ensure, in view of the serious nature of the crime of genocide, that the mere agreement to commit genocide should be punishable even if no preparatory act has taken place.");

> In 2000, *J.P. Morgan* agreed to settle compensation claims by the so-called *J.P. Morgan Settlement Agreement* which provided for the establishment of a settlement fund of U.S. $ 2,750,000 to compensate Jewish victims of the Holocaust who had seen their bank accounts seized during the Second World War in France. The Settlement Agreement was approved by the U.S. District Court;

> In the *Holocaust Victims Assets case* in 2000, a U.S. District Court approved a class-action Settlement Agreement between Holocaust victims and Swiss banks agreed in August 1998, finding it fair, reasonable and adequate. The Agreement set up a U.S. $1.25 billion fund to be created in four annual instalments over three years. In addition, it released, with few exceptions, "the Swiss Confederation, the Swiss National Bank, all other Swiss banks, and other members of Swiss industry". In its final order and judgment of 2000, the District Court approved the Settlement Agreement;

> In a concurrent resolution adopted in 2000, the *U.S. Congress* expressed its sense concerning the war crimes committed by the Japanese military during the Second World War, in particular experiments conducted on living prisoners of war. The resolution asked the Government of Japan to *apologize for these crimes* and *pay immediate reparations* to the victims;

> In *Mudd v. Caldera, 134 F. Supp. 2d 138, 145-46 (D.D.C. 2001)* (United States citizen who was an unlawful belligerent was triable for law of war violations before military commission);

➢ _East Timor's Unfinished Trial_ 2000 – 2006, the UN Security Council authorizes a tribunal to investigate and prosecute grave offenses that occurred during the conflict that erupted over Indonesia's annexation of East Timor in 1975. Fifty-five trials are held against nearly ninety individuals, eighty-four of whom are convicted. Many of those accused of crimes are Indonesian nationals and they are never tried because their government refuses to turn them over. Funding for the East Timor Tribunal and its investigative unit eventually runs out, leading to a backlog of more than five hundred unpursued cases;

➢ Creation of the International Criminal Court 2002, the _Rome Statute_, an international treaty signed by 139 nations, enters into force in July after being ratified by more than sixty countries, forming the International Criminal Court (ICC). The ICC, based in The Hague, Netherlands, is the first international permanent tribunal for the gravest violations of international law, including war crimes, genocide, and crimes against humanity. Countries that do not join include China, India, and the United States—which signed the Rome Statute in 2000;

➢ Sierra Leone and the Charles Taylor Precedent 2002 – 2013, the government of Sierra Leone and the United Nations agree to establish the _Special Court for Sierra Leone_ to try those most responsible for crimes against humanity committed during the country's civil war. Between 2002 and 2012, twenty-one people are indicted for war crimes, including murder, rape, enslavement, extermination, and attacks against UN peacekeepers. The most famous defendant is former Liberian President Charles Taylor, who is turned over to the court in 2006 on charges that he directed the rebel forces that committed many of the atrocities in Sierra Leone. The court finds Taylor guilty of war crimes, crimes against humanity, and serious violations of international humanitarian law, making him the first former head of state to be convicted by an international tribunal since World War II. In May 2012, the court sentences Taylor to fifty years in prison;

➢ In _Prosecutor v. Krnojelac_, ICTY Appeals Chamber, IT-97-25-A, _Judgment_, ¶96 (Sept. 17, 2003) ("The Appeals Chamber notes that, with regard to the crimes considered within a systemic form of joint criminal enterprise, the intent of the participants other than the principal offenders presupposes personal knowledge of the system of ill-treatment (whether proven by express testimony or a matter of reasonable inference from the accused's position of authority) and the intent to further the concerted system of ill-treatment. Using these criteria, it is less important to prove that there was a more or less formal agreement between all the participants than to prove their involvement in the system. As the Appeals Chamber recalled in the _Tadic_ Appeals Judgement, in his summary of the _Belsen_ case the Judge Advocate summed up and approved the Prosecution's legal submissions in the following terms: 'The case for the Prosecution is that all the accused employed on the staff at Auschwitz knew that a system and a course of conduct was in force, and that, in one way or another, in furtherance of a common agreement to run the camp in a brutal way, all those people were taking part in that course of conduct.'");

➢ _Iraqi Special Tribunal_ Convicts Saddam 2003, the special tribunal is established by the U.S.-appointed Iraqi Governing Council in December 2003 to try Iraqis who committed human rights atrocities during former dictator Saddam Hussein's rule, from 1968 to 2003. The interim government integrates the tribunal into the domestic legal system in 2005 and renames it the Iraqi High Tribunal. Saddam is accused of ordering the 1982 execution of about 150 Shiite Iraqis in the northern town of Dujail, killing some five thousand Kurds with chemical gas in Halabja in 1988, and invading Kuwait in 1990. The tribunal convicts Saddam in 2006, and in December he is executed by hanging. Several members of Saddam's Baathist cabinet stand trial and are convicted over the next several years; they are eventually executed or sentenced to life imprisonment;

➢ _Cambodian Genocide Tribunal_ 2003, in 2003, the Extraordinary Chambers in the Courts of Cambodia (ECCC) is established under Cambodian law. This follows a treaty between the Cambodian government and the United Nations to try senior members of the Khmer Rouge party and others most responsible for crimes against humanity, war crimes, and genocide of Cambodians during the party's rule in the late 1970s. Khmer Rouge leader Pol Pot, who dies while being held under house arrest by a faction of his own party in 1998, is never brought to trial or convicted for authorizing the crimes. The ECCC goes on to try surviving party leaders. Three of the most senior leaders—Nuon Chea, Khieu Samphan, and Ieng Sary—go on trial in late 2011. Sary dies in 2013 while the trial is ongoing. In 2014, Chea and Samphan receive life sentences for crimes against humanity and, in 2018, additional life sentences for genocide. Chea dies in 2019 while he appeals his genocide conviction. Khmer Rouge prison chief Kaing Guek Eav, who managed the infamous S-21 torture center, is sentenced to life imprisonment in March 2012 for war crimes and crimes against humanity. Three defendants remain subject to prosecution;

➤ In *Hamdan v. Rumsfeld*, 548 U.S. 1, 23 (2006) (Thomas, J., dissenting) ("The Civil War experience provides further support for the President's conclusion that conspiracy to violate the laws of war is an offense cognizable before law-of-war military commissions. Indeed, in the highest profile case to be tried before a military commission relating to that war, namely, the trial of the men involved in the assassination of President Lincoln, the charge provided that those men had 'combin[ed], confederat[ed], and conspir[ed]...to kill and murder' President Lincoln.");

➤ In *Ferdinand Nahimana, Jean-Bosco Barayagwiza, Hassan Ngeze v. The Prosecutor*, ICTR Appeals Chamber, ICTR-99-52-A, *Judgment*, ¶894 (Nov. 28, 2007) ("Conspiracy to commit genocide under Article 2(3)(b) of the Statute has been defined as 'an agreement between two or more persons to commit the crime of genocide'. The existence of such an agreement between individuals to commit genocide (or 'concerted agreement to act') is its material element (actus reus); furthermore, the individuals involved in the agreement must have the intent to destroy in whole or in part a national, ethnical, racial or religious group as such (mens rea).");

➤ *Peru's Fujimori Tried* for Shining Path Crackdown 2007 – 2009, in 2000, after ten years in office, Peruvian President Alberto Fujimori faxes in his resignation from Japan amid a corruption scandal involving his intelligence chief, Vladimiro Montesinos. Fujimori is arrested in Chile in 2005, and two years later extradited to Peru, where he undergoes several trials for corruption and human rights violations allegedly committed during his presidency. In 2009, he is convicted and sentenced to twenty-five years in prison for authorizing two military squad operations that resulted in kidnappings and several civilian deaths, which Fujimori said were targeted at members of the Shining Path terrorist group. In 2017, President Pedro Pablo Kuczynski grants Fujimori a humanitarian pardon, a move that sparks protests and is later reversed by the country's Supreme Court;

➤ Controversial Case of Congolese Rebel Leader 2008, *Former Congolese Vice President Jean-Pierre Bemba Gombo* is arrested outside of Brussels in 2008 on a warrant issued by the ICC. He is charged with crimes against humanity and war crimes committed by the Movement for the Liberation of the Congo, forces under his command, in the Central African Republic from 2002 to 2003. In 2016, Bemba is convicted for crimes including sexual violence—the first such conviction by the ICC—and sentenced to eighteen years in prison. Two years later, however, Bemba is acquitted of all charges. The ICC appeals panel rejects the conviction on the grounds of command responsibility, ruling that Bemba cannot be held responsible for crimes committed by his fighters. He returns to the Democratic Republic of Congo and announces his candidacy for president in the 2018 election, but is barred from running by the national electoral commission;

➤ In *United States v. Passaro*, 577 F.3d 207, 210-12 (4th Cir. 2009) ("This case arises from the conviction in a United States federal court of an American citizen for the brutal assault on an Afghan national in Afghanistan. A jury in the Eastern District of North Carolina found David A. Passaro, a Central Intelligence Agency civilian contractor, guilty of assault on Abdul Wali. The assault occurred in 2003 at Asadabad Firebase, a United States Army outpost in Afghanistan. ... The Government predicated federal criminal jurisdiction in this case on the special maritime and territorial jurisdiction statute.");

➤ Sudan's Bashir Wanted by ICC 2009, in March 2009, the ICC indicts *Sudanese President Omar al-Bashir* for orchestrating a campaign of mass violence—including murder, torture, and rape—against non-Arab ethnic groups in the Darfur region since 2003. He is the first sitting president of a nation to be indicted by the ICC. Sudan, which is not a party to the Rome Statute and does not recognize the court, does not turn him over. The African Union also rejects the warrant, arguing that the ICC has a bias against African nations, and calls on member states not to arrest Bashir if he is received in their countries. In April 2019, following months of popular protests, the Sudanese military forces Bashir to step down and arrests him, though it says it will not hand him over to the ICC. Later that year, a Sudanese court convicts Bashir of corruption and financial crimes and sentences him to two years in detention. In early 2020, Sudanese officials announce their intent to transfer Bashir to The Hague for prosecution;

➤ In United States v. Belfast, 611 F.3d 783, 793 (11th Cir. 2010) (affirming the trial court's 97-year sentence in 2008, Charles "Chuckie" Taylor, son of Charles Taylor, former president of Liberia and convicted war criminal, received a 97-year sentence under the 1994 Torture Statute);

➢ The Case Against *Qaddafi* 2011, in June 2011, the ICC indicts Libyan leader Muammar al-Qaddafi, his son, and brother-in-law for crimes against humanity arising from their authorization of the killing of protesters during Libya's popular uprising. Qaddafi is killed by opposition forces in October, and one month later, his son, Saif al-Islam Qaddafi, is arrested during an attempted escape. In the following months, Libyan officials and the ICC dispute the location of Saif's trial; Libyan authorities argue he should be tried in his home country, while the ICC maintains that he would have a fairer trial at The Hague. Qaddafi's brother-in-law and intelligence chief, Abdullah Senussi, is captured in Mauritania in March 2012 and extradited to Libya, where, in 2015, he is sentenced to death. Senussi is appealing the verdict;

➢ ICC Struggles to Prosecute Kenyan Crimes 2011, Uhuru Kenyatta, *Kenya's finance minister and a deputy prime minister,* is indicted in March 2011 on charges of crimes against humanity for his role in postelection violence in 2007 and 2008 that killed about 1,300 people and displaced hundreds of thousands. Kenyatta, a member of the Kikuyu ethnic group, is accused of helping plan and fund attacks against opposition-supporting ethnic groups in several southwestern cities; five other political figures are also charged. He and fellow defendant William Ruto, who runs on the same ticket, win the country's 2013 presidential election despite the court's ongoing investigation. In 2016, the court drops its cases against Kenyatta and Ruto, citing witness tampering and lack of cooperation;

➢ Tunisian Leader's Ouster in Arab Spring 2011, mass protests calling for the resignation of *President Zine al-Abidine Ben Ali,* in office for more than twenty years, erupt across Tunisia. After several weeks, the armed forces surround the presidential palace, and Ben Ali flees with his family to Saudi Arabia. The interim government calls on the international policing organization Interpol to issue an arrest warrant for him on charges of embezzling state funds. Saudi Arabia rejects extradition requests, and Ben Ali and his wife are tried in absentia and each sentenced to thirty-five years in prison. He is later convicted of other crimes, including possessing illegal drugs and weapons and ordering the killing of protesters. Ben Ali dies in exile in September 2019, without serving prison time;

➢ *Trial of Egypt's Mubarak* 2011 – 2012, three months after resigning as president of Egypt, a post he held from 1981 to 2011, Hosni Mubarak is ordered to stand trial in a domestic court on charges of corruption and premeditated murder of Arab Spring protesters. The trial lasts from August 2011 to June 2012, when Mubarak is convicted of complicity in protesters' deaths but is acquitted on corruption charges. The court sentences him to life in prison. Despite Mubarak's verdict and sentencing, six senior security officials are acquitted of complicity in the killings, prompting nationwide protests. Mubarak is released from detention in 2017, and he dies in a Cairo hospital after undergoing surgery in February 2020;

➢ In *Belgium v. Senegal*, the International Court of Justice (ICJ) recently adopted the interpretation of the Torture Convention in its landmark case relating to the Obligation to Prosecute or Extradite (Belg. v. Sen.), Judgment (July 20, 2012), http://www.icjcij.org/docket/files/144/17064.pdf the former President of Chad, Hissène Habré. Before being ousted from Chad in 1990, Habré had presided over 40,000 political killings and widespread torture. *(See* US Inst. of Peace, *Chad: Report of the Commission of Inquiry into the Crimes and Misappropriations Committed by Ex-President Habre, His Accomplices and/or Accessories, in* TRANSITIONAL JUSTICE: HOW EMERGING DEMOCRACIES RECKON WITH FORMER REGIMES 81 (Neil J. Kritz ed., 1992).) * Habré then sought refuge in Senegal. (*See* Aaron Solomon, *The Politics of Prosecutions Under the Convention Against Torture,* 2 CHI. J. INT'L L. 309, 310 (2001) (noting Senegal's failure to prosecute Habré while he resided there, despite indicting him). In 2009, Belgium, after numerous attempts to extradite Habré for trial, initiated an action against Senegal seeking Habré's extradition or prosecution based on the Torture Convention. Belgium alleged that Senegal's refusal to prosecute Habré domestically or extradite him to Belgium for prosecution violated provisions under the Torture Convention and customary international law. The ICJ accepted Belgium's argument that the Torture Convention creates a duty for signatories to prosecute, or extradite for prosecution, suspected torturers. Moreover, the ICJ held that Senegal's failure to seek prosecution or extradition of Habré constituted a breach of the Torture Convention. It found unanimously that Senegal must either prosecute Habré or extradite him for the purpose of prosecution immediately;

➢ *Guatemala's Genocide Trial* 2012 – 2013, former Guatemalan President Efrain Rios Montt is indicted in January 2012 for the killing of indigenous people during the country's civil war, which lasted from 1960 to 1996. He is charged again in May 2012 for authorizing the 1982 massacre at Dos Erres, which killed more than two hundred people. In May 2013, a Guatemalan court finds the eighty-six-year-old Rios Montt guilty of genocide and crimes against humanity, making him the first former Latin American leader to be convicted on such charges, and he is sentenced to eighty years in prison. However, the constitutional court annuls the ruling

days later, ordering the trial court to rehear the last month of the case. Rios Montt is retried in absentia but dies in 2018;

➢ A *Pakistani special court* in 2019 sentenced *former military dictator and president Pervez Musharraf* to death in absentia, ending a six-year long high treason case against him and delivering a historic verdict against the country's powerful army;

➢ In *Smith v. United States*, 133 S. Ct. 714, 719 (2013) ("The essence of conspiracy is 'the combination of minds in an unlawful purpose.'") (quoting United States v. Hirsch, 100 U.S. 33, 34 (1879));

➢ In *United States v. McKinney*, 954 F.2d 471, 474 (7th Cir. 1992) an (Overt Act) in furtherance of the conspiracy occurs when any conspirator commits some act other than planning, to further the goal of the conspiracy;

➢ In *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924) Conspiring to Defraud the United States means primarily to cheat the government out of property, money, or to obstruct a lawful governmental function by deceit, craft or trickery, or at least by means that are dishonest;

➢ In *United States v. Gebbie*, 294 F.3d 540, 544 (3d Cir. 2002); United States v. Cefalu, 85 F.3d 964, 969 (2d Cir. 1996); *United States v. Vasquez-Chan*, 978 F.2d 546, 555(9th Cir. 1992); see also *Patel v. Mukasey*, 526 F.3d 800, 803 (5th Cir. 2008); see also *United States v. Boyd*, 640 F.3d 657, 668 (6th Cir. 2011) ("To sustain a conviction for misprision of felony, the Government must prove beyond a reasonable doubt that principal committed the felony alleged");

➢ In *Pinkerton v. United States*, 328 U.S. 640, 647 (1946) ("A scheme to use the mails to defraud, which is joined in by more than one person, is a conspiracy. Yet all members are responsible, though only one did the mailing. The governing principle is the same when the substantive offense is committed by one of the conspirators in furtherance of the unlawful project. The criminal intent to do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all.");

➢ In *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999) (citing Carpenter v. United States, 484 U.S. 19, 25 n.6 (1987)) Because section 1341 and section 1343 share the same language, in relevant part, the Supreme Court has held that the same analysis applies to both statutes. Similar to the mail fraud statute, the federal wire fraud statute, codified at 18 U.S.C. § 1343, prohibits anyone from devising a scheme to defraud using "Wire, Radio, or Television Communication." (18 U.S.C. § 1343 (2008);

➢ In *United States v. Stewart*, 207 F.3d 658 (Table), at 7 (5th Cir. 2000), in ordinary usage "harass" may mean to irritate or torment persistently; to wear out, exhaust; to impede and exhaust (an enemy) by repeated attacks or raids.";

➢ In *United States v. Al-Zubaidy*, 283 F.3d 804, 808 (6th Cir. 2002), *cert denied*, 122 S. Ct. 2638 (2002), that the victim was placed in reasonable fear of death or serious bodily injury to themselves or a member of their family as a result of that travel;

➢ In *Velasco v. United States*, No. 8:05-CR-496-T-23MSS, 2006 WL 1679586, at *5 (M.D. Fla. June 14, 2006); *United States v. Hunt*, 526 F.3d 739, 745 (11th Cir. 2008), to prosecute an individual for obstruction of justice, section 1519 requires that the defendant, "knowingly alter, destroy, mutilate, conceal, cover up, falsify, or make a false entry in any record, document, or tangible object . . . ." (§ 1519.) That is, the defendant must have been aware that his or her conduct was unlawful or wrongful, and that it could potentially impede an investigation;

➢ Courts have interpreted section 1519 to apply to FBI investigations (Hunt, 526 F.3d at 743.), police reports that are later reviewed in a federal investigation, official federal investigation reports (*United States v. Jackson*, 186 Fed. App'x 736, 738 (9th Cir. 2006) (affirming defendant's conviction by lower court).), grand jury investigations, (*United States v. Hoffman-Vaile*, 568 F.3d 1335, 1343 (11th Cir. 2009).), bankruptcy proceedings (*United States v. Holstein*, 618 F.3d 610, 612-13 (7th Cir. 2010).), Defense Logistic Agency investigations (*United States v. Lessner*, 498 F.3d 185, 188 (3d

Cir. 2007).), and other federal investigations and inquiries. This list, however, is not exhaustive; Congress intended for section 1519 to apply broadly so as "not to include any technical requirement." (S. Rep. No. 107-146, at 14.);

➢ In *Smith v. United States*, 363 F.2d 143, 144 (5th Cir. 1966), to successfully prosecute a defendant under section 1621(1), the accused must have taken an oath authorized by the "law of the United States" before the false testimony was made. (The phrase "laws of the United States" includes federal statutes "as well as Rules and 1116 § 1621(1);

➢ In *Bivens* the Supreme Court established an implied cause of action directly under the Constitution against federal officials. The *Bivens* remedy is essentially a judicially created equivalent of section 1983, except that it applies to persons violating constitutional rights under color of federal law;

➢ In *Smith v. Wade* (103 S. Ct. 1625 (1983), the Supreme Court established punitive damages as an integral component of the relief available in section 1983 actions. By sanctioning such awards, the Court advanced one of the specific purposes underlying section 1983, that of preventing future violations of constitutional rights. The decision properly reflects the compelling need to punish and deter aggravated misconduct when interests as important as constitutional rights are at stake. Furthermore, by adopting a reckless disregard standard, the Court avoided unduly restricting the availability and effect of punitive damages in section 1983 actions. Preserving a strong civil rights cause of action is essential to a continued dedication to individual liberties;

➢ In *Dennis v. Higgins*, 498 U.S. 439, 450–51 (1991), when a plaintiff asserts the violation of a right specifically identified in the Bill of Rights or protected under the substantive component of the due process clause, the violation is complete at the time of the challenged conduct and the § 1983 remedy is available regardless of remedies provided under state law. In addition to these Fourteenth Amendment rights, a violation of the dormant commerce clause is actionable under § 1983;

➢ In *Smith v. Wade*, 461 U.S. 30, 56 (1983), a plaintiff may be awarded punitive damages against an individual defendant "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.";

➢ In *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974), to obtain injunctive relief in federal court, a plaintiff must demonstrate "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.";

➢ Substantive Due Process prevents "governmental power from being 'used for purposes of oppression,'" *Daniels v. Williams*, 474 U.S. 327, 331, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986) (citation omitted), or "abuse of government power that shocks the conscience." *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981), or action that is "legally irrational [in that] it is not sufficiently keyed to any legitimate state interests." *Kindem v. City of Alameda*, 502 F. Supp. 1108, 1113-14 (N.D. Cal. 1980);

➢ In 1789 the only recognized violations of international law were piracy, violations of safe conduct, and infringements on the rights of ambassadors. Today, "courts must interpret international law not as it was in 1789, but as it has evolved and exists among the nations of the world today." *Filartiga v. Pena Irala*, 630 F.2d 876 (2d. Cir. 1980). This includes Communist Torture, Crimes of Genocide, and Crimes Against Humanity;

➢ In *Dolan v. United States Postal Service*, 546 U.S. 481 (2006), was a case decided by the Supreme Court of the United States, involving the extent to which the United States Postal Service has sovereign immunity from lawsuits brought by private individuals under the Federal Tort Claims Act. The Court ruled that an exception to the FTCA that barred liability for the "negligent transmission of mail" only applied to damage caused to the mail itself or that resulted from its loss or delay.